## THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID HOLMES, Appellant.

First Department, June 23, 1992

## APPEARANCES OF COUNSEL

*Beverly Van Ness* of counsel *(Philip L. Weinstein,* attorney), for appellant.

*David Joseph Mudd* of counsel *(Beth J. Thomas* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

The question before us on this appeal from a motion denying suppression of physical evidence is the propriety of the police conduct resulting in the recovery of that evidence in light of the decision by the United States Supreme Court in *California v Hodari D.* (499 US —, 111 S Ct 1547, 113 L Ed 690).

At the hearing on defendant's motion to suppress, New York City Police Officers Nelthrope and Moynihan testified that they were on uniformed patrol at 12:40 P.M. on December 23, 1989, when they observed several men gathered near the premises of "a known narcotics location" on the east side of Amsterdam Avenue, between 163rd and 164th Streets. Moynihan noticed that defendant, who was part of the group, had an unidentified bulge in the right pocket of his long brown leather jacket. Nelthrope noticed that several of the men were familiar to him as having been arrested by other officers at the same location for drug-related offenses. (Although Nelthrope also testified that he recognized defendant as a former arrestee, the record is unclear as to the point at which he recognized him, and his testimony appears to indicate that it may not have been until after defendant was arrested in this case.)

As the patrol car approached the group, defendant began to

back off from the group and then turned and walked away. The officers stopped the car, and, from inside the vehicle, Moynihan called out to defendant requesting him to come over. Defendant turned around and was heading in the direction of the car, but, as Officer Moynihan started to exit the vehicle, defendant fled. The officers gave chase, with Moynihan pursuing defendant on foot and Nelthrope following in the police car. During the chase, when they were half way down 163rd Street, with Moynihan 10 feet from defendant, Moynihan saw defendant throw a plastic bag through a chain link fence into a courtyard. After defendant's apprehension, the bag was recovered and was found to contain 45 vials of crack cocaine.

The court declined to suppress the drugs, finding that the police officers' initial right to inquire of defendant escalated into a reasonable suspicion that he had committed or was about to commit a crime when he fled from the scene, thereby justifying the pursuit. Finding that the drugs were not discarded as the result of unlawful police action, the court held that they were admissible into evidence.

As the Court of Appeals has recently reaffirmed in *People v Hollman* (79 NY2d 181), the evaluation of the propriety of a street encounter between police and citizen is governed in this State by the principles enunciated in *People v De Bour* (40 NY2d 210). Applying those principles, we find that the facts concerning defendant which were available to the officers at the point when they stopped the car—i.e., that defendant and the others, some of whom had been arrested previously, were near a known narcotics location, that defendant had an unidentifiable bulge in his pocket, and that defendant walked away when he saw the police car approach—when taken together, were sufficient to constitute an "objective and credible reason" permitting the officers to intrude on defendant's privacy for the purpose of requesting information (79 NY2d, *supra,* at 191). However, since none of the factors within the knowledge of the police was necessarily indicative of criminality, and since defendant's behavior was not at all inconsistent with an innocent interpretation, at that point the police were not in possession of a "founded suspicion that criminality [was] afoot" *(supra,* at 191), which would have entitled them to conduct a more intrusive inquiry.

In view of the fact that defendant departed before any inquiry could be made, our analysis must focus, not on the level of inquiry which would have been permissible, but,

rather, on whether the police were permitted to pursue defendant once he failed to cooperate with their inquiry and, instead, ran from the scene.

In *People v Howard* (50 NY2d 583, 592, *cert denied* 449 US 1023), it was made clear that, under the law of this State, pursuit by police officers constitutes a "limited detention" of the person pursued, and must therefore be justified by a reasonable suspicion that the person has committed or is about to commit a crime *(People v Leung,* 68 NY2d 734). Defendant candidly concedes that the subsequent United States Supreme Court holding in *California v Hodari D.* (499 US —, 111 S Ct 1547, 113 L Ed 2d 690, *supra)* that pursuit is not a seizure within the meaning of the Federal Constitution, forecloses any argument that the police violated his rights under the Fourth Amendment of the Federal Constitution, and he seeks relief solely under principles of this State's law.

Although *Hodari D. (supra)* may have overruled the decision in *People v Howard (supra)* insofar as it held that the act of pursuit itself would be a limited seizure within the meaning of the Federal Constitution, it is significant that the Court of Appeals explicitly based its determination in *Howard (supra)* not only on the Federal Constitution but also on the New York State Constitution, specifically article I, § 12, which is not identical in scope with the Federal Fourth Amendment and has been held, in various instances, to provide our citizens with greater protection from governmental intrusion *(People v Scott,* 79 NY2d 474) than that afforded by the Federal provision. Moreover, the Court of Appeals has also made clear that the privacy of the citizens of this State from governmental intrusion is protected not only by the constitutional proscriptions against unwarranted searches and seizures but, also, by New York common law, under which police encounters "that fall short of Fourth Amendment seizures still implicate the privacy interests of all citizens and * * * should be evaluated under the *De Bour* test." *(People v Hollman, supra,* at 195.) While, in *Hollman,* the court did not deal specifically with the issue of pursuit, there is no reason to suppose that the court meant to exclude from its privacy analysis those fundamental policy considerations which entered into its holding in *Howard,* including the right of any citizen to refuse to cooperate with the police and the fact that flight from the police, in and of itself, is not necessarily indicative of guilt.

Since we conclude that the principles enunciated in *People v Howard (supra),* still govern the propriety of police intrusions,

including pursuit, where such are contested under this State's law, we must evaluate the factual predicate of the instant case within the parameters of the holding in that case. In so doing, we emphasize that at the time the pursuit here commenced, the officers, at most, had an objective credible reason, not necessarily indicative of criminality, which permitted them to approach defendant and request information. This factual predicate must be distinguished from one in which, before the defendant flees, the police are already in possession of a founded suspicion that criminality is afoot. In the latter case, the additional implication of guilt provided by the defendant's flight has generally been held sufficient to enhance the predicate to the reasonable suspicion necessary to justify a chase *(see, e.g., People v Leung,* 68 NY2d 734, *supra; People v Rivera,* 175 AD2d 78, *lv denied* 78 NY2d 1129; *People v Allen,* 141 AD2d 405, *affd* 73 NY2d 378).

This case also differs from one in which, while, upon first approaching the defendant and commencing their inquiry, the police have no basis upon which to suspect the defendant of criminal activity, the defendant's response to a legitimate police inquiry is not a refusal to cooperate, but a deliberate attempt to deceive, such as by giving demonstrably false answers *(cf., People v Hollman, supra)* or by immediately discarding incriminating evidence *(cf., People v Jones,* 118 AD2d 86, *affd* 69 NY2d 853). While a citizen who is not under suspicion of criminal activity may refuse to cooperate without justifying further police intrusion, his or her deliberate deception under such circumstances is not entitled to the same deference, and the police are entitled to draw any appropriate inferences.

In this case, however, as in *Howard (supra),* we are confronted solely with the situation where the police have an objective and credible reason to make an inquiry, but no founded suspicion to believe that criminal activity is afoot. In that matrix, under the governing principles enunciated in *Howard,* the fact that the citizen, in response to the police inquiry, declines to respond or leaves the scene, even at a run, does not provide the police with a sufficient basis to justify a chase and subsequent detention. Under such circumstances, any evidence recovered as a result of the unjustifiable police conduct must be suppressed.

The prosecution alternatively argues that, even if the conduct of the police was unlawful, the taint of that unlawful behavior was attenuated when defendant threw away the bag

containing the drugs. However, the facts of this case, including that the officers were in continuous hot pursuit, with one of them being only 10 feet from the defendant when he divested himself of the bag, compel a finding that the bag was discarded as a spontaneous reaction to the sudden and unexpected pursuit by the officers and not as an "independent act, involving a calculated risk" attenuated from the underlying police conduct *(People v Grant,* 164 AD2d 170, 174, *appeal dismissed* 77 NY2d 926; *see also, People v Boodle,* 47 NY2d 398, 404, *cert denied* 444 US 969). We therefore find that the taint of illegality was not attenuated and that the bag, and its contents, must be suppressed.

Judgment, Supreme Court, New York County (Thomas Galligan, J.), rendered June 19, 1990, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the fifth degree, and sentencing him to an indeterminate term of imprisonment of two to four years, unanimously reversed, on the law and the facts, the plea vacated, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

KUPFERMAN, J. (concurring on constraint). The majority opinion well analyzes the situation. While the determination of the United States Supreme Court in *California v Hodari D.* (499 US —, 111 S Ct 1547, 113 L Ed 2d 690) is the better view, we are constrained by the policy decision of the New York Court of Appeals.

SULLIVAN, J. P., and MILONAS, J., concur with ELLERIN, J.; KUPFERMAN, J., concurs in a separate opinion.

Judgment, Supreme Court, New York County, rendered June 19, 1990, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the fifth degree, and sentencing him to an indeterminate term of imprisonment of two to four years, unanimously reversed, on the law and the facts, the plea vacated, and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant

to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.