■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH MITCHELL, Appellant.—Judgment, Supreme Court, New York County (Joan Sudolnik, J.), rendered December 20, 1990, convicting defendant, after trial by jury, of criminal possession of a controlled substance in the fifth degree, and sentencing him to an indeterminate term of imprisonment of two to four years, reversed, on the law and the facts, and the indictment dismissed. The matter is remitted to the trial court for the

purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required. The sole issue on appeal is the propriety of the court's order declining to suppress the drugs seized from defendant at his arrest.

At the hearing on the motion to suppress, New York City Police Officers Kokeas and Higgins testified that, at approximately 2:00 A.M. on April 5, 1990, they were on uniformed motor patrol travelling southbound on Second Avenue. Kokeas observed defendant standing in front of a building near 102nd Street in which both officers had made numerous arrests, primarily involving crack cocaine. The building was located next door to a grocery store, which was open. After the officers pulled up near to where defendant was standing, they saw him toss something to the ground. Kokeas immediately left the car and walked over to the area where the object had fallen to look for it with his flashlight. As Kokeas picked something up from the ground, defendant turned and walked toward the building, ignoring the requests of both officers to stop. Kokeas testified that the item he picked up appeared to be a vial of crack cocaine contained in a glassine envelope. Higgins, without observing what Kokeas had picked up, immediately followed defendant, who, as he was entering the building, made a motion to his mouth with his right hand. When defendant started to run up the stairs, Higgins ran after him, grabbed him and, when he started to make an inquiry, saw crack vials fall from the defendant's mouth. Defendant was thereupon arrested and charged with possession of the cocaine found on his person.

Initially, we note that, while the police are permitted to rely on the direction of their fellow officers to arrest without simultaneously knowing the underlying facts which led to such direction, they cannot be considered to have relied on information possessed by each other without there having been any communication of either the information itself or a direction to arrest (see, People v Brnja, 50 NY2d 366, 373, n 4). Therefore, inasmuch as Higgins not only testified that he did not know what Kokeas had picked up from the ground, but never testified that he relied on, or even heard, Kokeas' request that defendant stop, Kokeas' knowledge of what defendant had discarded cannot be imputed to Higgins.

Thus, the within encounter must be analyzed solely by

reference to the information which was actually available to Higgins, the arresting officer. At the time that Higgins requested defendant to stop, defendant had been standing in front of a drug prone location, but only a short distance from an open grocery store. Upon the arrival of the police car, he had tossed something to the ground and, after the police left the car, he started to walk away. While none of these factors was necessarily indicative of criminal activity and each is capable of an innocent interpretation, they were sufficient to constitute an objective credible reason sufficient to support the officers' intrusion upon defendant's privacy for the purpose of requesting information (see, People v De Bour, 40 NY2d 210; People v Hollman, 79 NY2d 181; People v Holmes, 181 AD2d 27). Thus, at that point, Officer Higgins acted appropriately in requesting defendant to stop.

However, when defendant failed to comply, Higgins immediately undertook to follow and pursue defendant. Under New York law, before a police officer may subject a person to the "limited detention" (People v Howard, 50 NY2d 583, 592, cert denied 449 US 1023) inherent in pursuit, he or she must have a reasonable suspicion that that person has committed or is about to commit a crime (People v Leung, 68 NY2d 734; People v Holmes, supra). In this case, we find that defendant's reaction to the police request to stop was not sufficiently incriminating to raise Higgins' level of suspicion to that necessary to justify pursuit. Merely failing to cooperate and leaving the scene is not sufficiently indicative of criminality to enhance an objective credible reason to request information to reasonable suspicion (People v Howard, supra; People v Holmes, supra). Nor, in this case, was the police officer's suspicion sufficiently heightened by any attempt upon defendant's part to deceive (cf., People v Hollman, supra; People v Jones, 118 AD2d 86, affd 69 NY2d 853). In particular, we note that Higgins' testimony that he saw defendant make a motion to his mouth, without any indication that he had seen defendant actually put anything in his mouth, was too speculative and innocuous a basis upon which to rest a conclusion that defendant was hiding contraband.

Under these circumstances we find that the drugs which were found upon defendant at his arrest should be suppressed, and the indictment which charged him with their possession dismissed. Concur—Milonas, J. P., Rosenberger and Ellerin, JJ.

Asch, J., dissents in a memorandum as follows: Police Officer William Higgins and Officer Louis Kokeas, on radio

motor patrol, approached a building at 102nd Street on Second Avenue, which was known to both of them as a drug infested location. In fact, Officer Higgins testified that he personally "made arrests in that building", for "narcotics, mainly crack". When Higgins stopped the car in front of the building, he saw the defendant look at his left hand, open it and throw something away. Officer Kokeas went toward the object that defendant had thrown away and discovered it was a large vial of crack cocaine packaged in a clear glassine envelope. He retrieved this object and then saw defendant make a hand movement toward his mouth. Kokeas ordered him to halt.

Higgins testified that after defendant threw something away, he stepped out of the police car and started walking towards the defendant. Defendant then "went from where he was standing by the building and started to walk into the lobby of the building". Officer Higgins said at that point, "I asked him to stop." The officer then saw the defendant, who was walking into the building away from the approaching police officer, "with his right hand make a motion to the mouth * * * He looked as if he was putting something in his mouth." As defendant ran up the stairs in the building, Higgins followed, told him to stop and managed to stop him on the second floor landing in the building. At that point, Higgins testified: "I started to talk to him. I asked him his name and if he lived in the building. When he started to talk, vials of crack fell out of his mouth and fell on to the floor." When Higgins asked if he had anything else in his mouth "he started to mumble again" and Higgins asked defendant to spit out whatever he had in his mouth. "He spit out a bunch of vials and my partner picked them up".

Initially, I note that once Kokeas saw that defendant had tossed away a vial of crack cocaine, the officers had probable cause to arrest defendant, without further ado, at that time.

While the defendant, and the majority herein, claim that Higgins had no reasonable suspicion to stop defendant because there was no actual communication between the officers, this objection by the defendant was *not* raised by defendant at the hearing, and has, therefore, been waived.

In any event, an arresting officer acts with probable cause when he acts at the direction of another officer who possesses such probable cause, or when he acts on the basis of information transmitted by the other officer which establishes probable cause *(see, People v Rosario,* 78 NY2d 583, 588-589, *cert*

*denied* — US —, 112 S Ct 1210; *People v Petralia,* 62 NY2d 47, 52, *cert denied* 469 US 852). The information given by Kokeas was both verbal and non-verbal. Thus, when Kokeas went to pick up the crack vial, Higgins saw defendant start to quickly walk away. In addition, Higgins and Kokeas were close by when Kokeas yelled to defendant to stop. While the defendant, and indeed the majority herein, assert that the testimony shows that Higgins did not hear Kokeas yell to defendant to stop, the *hearing record* contains no such testimony and the issue was not explored by defendant at the hearing. The majority impermissibly buttresses its conclusions as to the correctness of the suppression hearing result from the trial testimony *(see, People v Riley,* 70 NY2d 523, 532; *People v Dodt,* 61 NY2d 408, 414). In any event, the very fact that Kokeas went to retrieve the object which defendant threw away, in this drug prone location, where Higgins had made many other drug arrests, and where Higgins observed that defendant had begun walking away as soon as Kokeas moved to pick up the discarded object, conveyed a non-verbal message to Higgins that the discarded object was indeed contraband *(see,* Eckholm, *Who's Got a Gun? Clues Are In the Body Language,* New York Times, May 26, 1992, at B3).

Moreover, it is obvious (and conceded by the majority) that the testimony of Officer Higgins, considered without reference to the knowledge of Kokeas that the discarded object was a crack vial, showed that Higgins himself had sufficient ground to approach and question defendant based on his own observations. Defendant was standing outside a building, familiar to Higgins as a known drug location, at 2:00 A.M. As soon as the police car stopped, defendant opened his hand, looked at it and threw a small object to the ground. When one of the officers went to retrieve the object, defendant walked quickly away into the same drug-infested building. Contrary to the legal conclusion drawn by the majority from the undisputed facts, this activated the common-law right to inquire, since Higgins had a "founded suspicion that criminal activity [was] afoot", and permitted a greater intrusion on the part of Higgins than merely approaching to request information *(People v De Bour,* 40 NY2d 210, 223). However, even at this point, Higgins did not take out his weapon but simply requested defendant to stop in order to ask him his name and if he lived in the building (which were exactly the questions he did ask when he finally stopped defendant on the second floor).

As the Court of Appeals has recently stated, in reaffirming the viability of *De Bour (supra):* "We are convinced that the

four-part *De Bour* analysis still has vitality. Each progressive level, however, authorizes a separate degree of police interference with the liberty of the person approached and consequently requires escalating suspicion on the part of the investigating officer. We conclude, as a general matter, that a request for information involves basic, non-threatening questions regarding, for instance, identity, address or destination. As we stated in *De Bour,* these questions need be supported only by an objective credible reason not necessarily indicative of criminality. Once the officer asks more pointed questions that would lead the person approached reasonably to believe that he or she is suspected of some wrongdoing and is the focus of the officer's investigation, the officer is no longer merely seeking information. This has become a common-law inquiry that must be supported by a founded suspicion that criminality is afoot." *(People v Hollman,* 79 NY2d 181, 185.)

When Higgins followed defendant into the building, he saw defendant put his hand to his mouth as if he were putting something inside it. Higgins, by reason of his many drug arrests, was familiar with the practice of defendants secreting drugs in their mouths. Thus, this act, at the very least, strengthened the officer's "founded suspicion that criminal activity [was] afoot" and his common-law right to inquire. It could even be construed to give Higgins a reasonable suspicion that defendant had committed, or was committing the felony or misdemeanor of drug possession *(People v De Bour, supra,* at 223).

Since Higgins possessed, at the least, the common-law right to inquire, he also had the right to ask defendant to stop. Once again, the intrusion here was minimal. Higgins had not touched defendant, nor drawn his gun. The subsequent flight of defendant inside the building and up the stairs was an escalating event which, combined with the other factors set forth, was sufficient to give Higgins a reasonable suspicion that defendant had committed or was committing a crime and justified the pursuit up the stairs *(see, People v Leung,* 68 NY2d 734, 736). Once Higgins stopped defendant on the second floor landing, and asked his name and whether he lived in the building, the three vials of cocaine dropped out of defendant's mouth. Certainly, at that time, if not sooner, the officer had probable cause to arrest defendant for committing a crime in his presence.

Finally, I note, even if we assume that the majority is correct and the drugs seized from defendant *at his arrest* must be suppressed, defendant concedes (in his request for a modifi-

cation and reduction of sentence) that his conviction of the lesser included offense of criminal possession of a controlled substance in the seventh degree for possession of the crack vial which he abandoned, should be upheld.