(April 17, 1997)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ELIZABETH GONZALEZ, Respondent. [656 NYS2d 861] —Order, Supreme Court, New York County (Renee White, J.), entered on or about August 31, 1995, which granted defendant's motion to suppress identification testimony, physical evidence and statements, affirmed.

In this narcotics sale prosecution, the record supports the hearing court's determination that the People did not meet their burden of demonstrating probable cause for defendant's arrest (*People v Berrios*, 28 NY2d 361, 367). We note that there was insufficient circumstantial evidence of communication between officers linking defendant to any criminal conduct (*compare, People v Mitchell*, 185 AD2d 163, 164, *appeal dismissed* 81 NY2d 819, *with People v Mims*, 88 NY2d 99, 113-114). Since the identification, physical evidence and statements flowed directly from the initial illegal detention, the hearing court properly granted defendant's suppression motion in its entirety (*People v Watkins*, 228 AD2d 163). Concur—Murphy, P. J., Wallach and Williams, JJ.

Nardelli, J., dissents in a memorandum as follows: In this case, the majority agrees with the factual determination made by the hearing court and its legal conclusion suppressing identification testimony, physical evidence and statements. I also agree with the finding of fact made by the suppression court that the arresting officer, Detective Theodore Campbell, "testified honestly and truthful in all respects. He indicated what information he knew, what information he did not know". However, I dissent because I disagree as a matter of law with the suppression court and the majority herein as to the legal conclusions they draw from the admitted and undisputed testimony.

Defendant was apprehended by a member of a drug "buy and bust" operation after her participation in a sale of drugs to an undercover officer. Although Detective Campbell was not the original arresting officer, he testified that defendant was brought to the scene, where he was with the co-defendant Serrano. Detective Campbell waited at that scene until the undercover officer drove by and identified Serrano and defen-

dant by radio communication as the drug sellers. At *that time,* after the identification, the detective searched defendant and found a beeper and $51 including $10 in marked buy money. The court suppressed all the evidence, ruling that the People had not established that the original detention of defendant was supported by probable cause.

Initially, I note that, contrary to this legal conclusion, the evidence at the hearing established that the police officer or officers who *first* arrested defendant had probable cause to do so. In a suppression hearing, the People have the burden of going forward initially to show the propriety of the police conduct and the defendant, thereafter, has the (much heavier) burden of establishing that the conduct was illegal. There is *no* requirement that either side establish their respective burden solely by direct evidence. Circumstantial evidence is competent to be evaluated by the trier of fact in determining whether the People and defendant have met their respective burdens (*People. v Mims,* 88 NY2d 99, 114; *People v Sabeno,* 223 AD2d 512, *lv denied* 88 NY2d 884).

In this case, Detective Campbell testified as to the preparations for the "buy and bust." He and the team leader, a sergeant, arrived at the setup location, and in testimony, as noted above, totally credited by the suppression court which observed and heard Detective Campbell, said:

"The team leader communicated to the undercover officers to see if their radios were working. After *we saw that the radios were working,* the undercover officers were given the green light to leave their van * * *

"[W]e got further communication of a description of a male Hispanic wearing a green jacket, blue jeans, brown boots, was in conversation with the undercover officer, and that he was approximately 5'8" to 6 feet tall * * * There was an exchange between the two, and it is *[sic]* was positive buy * * *

"We received further communique that the subject, which later was identified as Mr. Serrano, had walked over to another subject, who *was identified as a female Hispanic and that she was wearing a red jacket and black pants. He [Serrano] proceeded to hand her the pre-recorded buy money that was still in his hand."* (Emphasis added.)

It can be seen from the above narrative that the undisputed and accepted evidence showed that *every* member of the team was in contact with working radios and was instantly apprised of what the undercover officers were doing and observing. Further, the undisputed testimony of the detective was that he knew "for a fact" that the officers who initially stopped defen-

dant were members of the field team, although the detective could not identify them further. Finally, at the time of the hearing, the detective testified that no *other* officers had access to the radio frequency which carried the field team's reports. This was circumstantial evidence proving that the officers who initially stopped defendant did so in response to the same report from the undercover officer that Detective Campbell heard and about which he testified. Consequently, the People met their burden of going forward to show the propriety of the police action in the initial detention of defendant. The Court of Appeals has held that an inference that a *seizing but nontestifying officer* saw the same bulge in a suspect's pants, justifying a seizure, which his partner had testified he had observed, was reasonable as a matter of law since both the officer and his partner *heard the same radio dispatch* that described the suspect (*Matter of Jose R.*, 88 NY2d 863). Finally, this Court, in a case "on all fours" with the instant matter, observed: "Defendant's suppression motion was properly denied upon evidence that the undercover officer, within moments of the sale, transmitted to the entire backup team exact descriptions of the two sellers; that one of the sellers, codefendant, was apprehended moments later near the location of the sale by the officer who testified at the hearing; that the other seller, defendant, was apprehended at the exact location of the sale by another officer who did not testify; and that a confirmatory identification by the undercover officer followed minutes after the apprehensions. Such evidence permits no other inference but that both apprehending officers had simultaneously heard the identical radio transmission from the undercover officer and acted in response thereto in apprehending the suspects. The testimony of the officer who had apprehended defendant was therefore unnecessary [citation omitted]." (*People v Sabeno, supra*, at 512-513.)

Even assuming arguendo that the initial detention of defendant was unlawful, the suppression of defendant's statements, the identification testimony and the statements later made by defendant was still erroneous, as a matter of law, since all this evidence was *not* the product of defendant's initial arrest. "This Court has previously determined that additional information received by the police minutes following defendant's unlawful arrest provided an independent basis for probable cause, thereby severing any causal relationship between the unlawful arrest and the subsequent * * * identification [citation omitted]" (*People v Brown*, 233 AD2d 228, 229). Here, the uncontested facts show that Detective Campbell took legal custody of defendant long *before* any of the challenged evidence was

received. Thus, the detective heard the radio report describing defendant and detailing her role in the drug sale. He also heard the undercover officer confirm that she was indeed part of the drug duo that sold him contraband. Only then did he search defendant and find the physical evidence which the court suppressed. This custody by Detective Campbell at a time when he had "an independent basis for probable cause" (*supra,* at 229) severed any causal relationship between defendant's initial stop and the evidence subsequently garnered from him.