■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT BETHEA, Appellant. [889 NYS2d 31]—

Judgment, Supreme Court, New York County (Lewis Bart Stone, J., at hearing; Arlene R. Silverman, J., at jury trial and sentence), rendered May 1, 2008, convicting defendant of criminal possession of a controlled substance in the third degree, and sentencing him, as a second felony drug offender, to a term of four years, unanimously reversed, on the law, the motion to suppress granted, and the indictment dismissed.

At the hearing on the motion to suppress, Police Officer Tawee Theantong and Sergeant Frank O'Shea testified as follows: On June 20, 2007, they were assigned to the Housing Bureau Special Operations section and were on anticrime duty in plainclothes in an unmarked vehicle. At about 8:05 P.M., while they were stopped at a red light, Officer Theantong noticed defendant standing on the corner of 126th Street and Park Avenue, an area that the officer stated was known for prostitution and drugs. When the light changed, Theantong kept his eye on defendant, who looked over in the direction of the officers and made eye contact with them. Theantong believed that defendant had recognized them as police because he had "abruptly

changed direction." Theantong got out of the vehicle and approached defendant, displayed his badge, and said "[p]olice, don't move." Defendant walked away without acknowledging Theantong. Theantong told him to "hold on for a minute, I want to speak with you," and started running towards defendant. Before reaching defendant and placing a hand on him, Theantong noticed that defendant's back was hunched, "and he raised his right hand to his mouth, which indicated to me that he had placed something in his mouth." Theantong told defendant to turn around, and asked him what he had put into his mouth. Defendant replied, "[N]o, nothing. I have a toothache."

Sergeant O'Shea testified that while defendant was standing on the corner, he noticed that defendant had a small object in his hand, and that after they made eye contact, defendant turned, closed his hands and started walking away. After Theantong exited the vehicle, O'Shea started driving so he could get ahead of defendant. When O'Shea was almost even with defendant, he saw defendant put whatever he had in his hand into his mouth. The sergeant exited the vehicle, approached defendant and told him to open his mouth. Defendant did so, revealing a clear plastic bag. The sergeant "plucked it out" of defendant's mouth and the bag fell into defendant's hands. A struggle ensued when defendant attempted to place the bag back into his mouth. Defendant was arrested, and the bag, which was recovered from a tire rim of a vehicle parked on the street, was found to contain narcotics.

Defendant's suppression motion should have been granted. In denying the motion, the court found that the officers' initial request to speak to defendant and to stop was proper, and that his response, namely, to walk away and to put something into his mouth so as to conceal it, gave them the right to continue with a "level 2" inquiry,* i.e., to ask him what was in his mouth and to direct him to open his mouth. However, even assuming, without deciding, that the police had an objective credible reason to initiate an encounter with defendant based on their observation of him as he stood on the corner of 126th Street and Park Avenue at 8:00 P.M. as well as their observations that

---

* The court cited *People v De Bour* (40 NY2d 210, 223 [1976]), in which the Court of Appeals announced that "[t]he minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality." The next degree, or "level 2" as the trial court termed it, is "the common-law right to inquire, [which] is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion in that a policeman is entitled to interfere with a citizen to the extent necessary to gain explanatory information, but short of a forcible seizure" (*id.* at 223).

he made eye contact with them when they approached in their van and that he was holding a small object in his hand and turned to walk away from the van, defendant's reaction to the police request to stop and talk was not "sufficiently incriminating" to raise the police officers' level of suspicion enough to justify pursuit (*People v Mitchell*, 185 AD2d 163, 165 [1992], *appeal dismissed* 81 NY2d 819 [1993]). As we recognized in *Mitchell*, "[m]erely failing to cooperate and leaving the scene is not sufficiently indicative of criminality to enhance an objective credible reason to request information to reasonable suspicion" (*id.* at 165).

This is not a situation where the police had seen defendant engaging in suspicious activity indicative of illegal drug activity (*compare People v King*, 200 AD2d 487 [1994], *lv denied* 83 NY2d 873 [1994]) or were responding to a report of possible criminal activity in the area where defendant was spotted (*compare People v Becoate*, 59 AD3d 345 [2009], *lv denied* 12 NY3d 851 [2009]; *People v Stevenson*, 55 AD3d 486 [2008], *lv denied* 12 NY3d 788 [2009]). The trial court cited Sergeant O'Shea's testimony that he had observed defendant place something into his mouth. However, as defendant was not observed placing an object into his mouth until *after* the police began to pursue him, the fact that he put something into his mouth cannot justify the pursuit. Concur—Tom, J.P., Buckley, Catterson, Freedman and Abdus-Salaam, JJ.

