■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DANNY MARTIN, Appellant. [931 NYS2d 7]—

At the conclusion of the hearing, the court determined that the police officer's initial approach to defendant was proper and that there was probable cause for the arrest, and denied defendant's suppression motion. Defendant then entered into a guilty plea, which included a waiver of the right to appeal. Defendant's waiver of his right to appeal was invalid because the court conflated the appeal waiver with the rights automatically waived by the guilty plea. Nonetheless, the court properly denied defendant's suppression motion.

We agree with the hearing court that the officer's actions were justified at the inception and that the ensuing events justified the extent of the intrusion. Initially, the police officer's attention was drawn to defendant when the officer observed a suspicious interaction between defendant and another man; the officer saw defendant's left hand and the other man's right hand "touching one another" for between ten and thirty seconds on more than one occasion, leading the officer based on his training and experience, to believe that a "drug transaction" was "taking place." Contrary to the dissent's allegations, defendant's interactions and conduct were sufficient to provide the officer with a founded suspicion that criminality was afoot to justify a common-law right to inquire (cf. People v Bonilla, 81 AD3d 555 [2011]). The suspicious interaction took place in a drug-prone location and was observed by an experienced officer who was trained in the investigation and detection of narcotics.

Moreover, by the time the officer was within 9 to 10 feet of defendant and the other man, the officer observed a plastic bag containing a white substance "peeking out" from defendant's closed right fist. Based on his training and experience, he believed the white substance in the bag to be a controlled substance. Under the circumstances, the officer was justified in grabbing defendant's wrist and forcing open his hand, which revealed the plastic bag with the powder substance. Contrary to the dissent's position, the evidence supports the conclusion that the officer had a sufficient opportunity to observe and recognize the object in defendant's hand, and there is no basis for disturbing the court's credibility determinations. Accordingly, the officer had probable cause to arrest defendant for drug possession (see People v McRay, 51 NY2d 594 [1980]). Concur—Mazzarelli, J.P., Renwick, DeGrasse and Richter, JJ.

Freedman, J., dissents in a memorandum as follows: I agree that defendant's waiver of his right to appeal was invalid for the reasons stated by the majority, but I would have granted the suppression motion because I do not believe the seizure that occurred was supported by either a reasonable suspicion of criminality, or probable cause for an arrest.

The facts, viewed in the light most favorable to the prosecution, are that two plainclothes officers in an unmarked car were driving northbound along 7th Avenue at about 8:50 P.M. in September 2009 when they saw two men walking side by side on 7th Avenue near the corner of 144th Street. The arresting officer, Detective Barnes of the Manhattan Gang Unit, having patrolled the area and having made at least two arrests in the area, stated that this was a high crime area. No one else was on the street at that time. The officer testified that the two men's hands touched each other several times, defendant's left hand touching his companion's right hand, which made the officer suspect a possible drug transaction. He did not see any exchange between the men. The officer got out of the car and walked up to the men. He testified that a closed bank provided light. When he got within 9 or 10 feet, he claims that he saw defendant's right hand (not the hand that had touched his companion's hand) clenched into a fist. Either at that point or when he got closer to the men, Detective Barnes claims he saw a white substance "peeking" out of a plastic bag in defendant's closed fist, but he acknowledged that he was not sure that the substance was a drug. He identified himself and then asked the men, who were cooperative, for identification and if they had any weapons. They denied having weapons, but before they had a chance to produce the identification, the detective ordered them to put their hands up, frisked them for weapons although they denied having any, and then grabbed defendant's wrist and pried open the fingers of defendant's right hand. In the hand was a plastic bag containing chunks of crack cocaine. Defendant was arrested, no money was vouchered and defendant's companion was not arrested. In denying the motion to suppress, the trial court stated, "This is a very close case quite frankly; however I find that Detective Barnes was a credible witness."

*People v De Bour* (40 NY2d 210 [1976]) and *People v Hollman* (79 NY2d 181 [1992]) established a four-tiered scale justifying police intrusions into private citizens' lives in street encounters. Level one allows police officers to seek information when they have "some objective credible reason" to request information. A further level two inquiry may be made when officers have "a founded suspicion that criminal activity is afoot." Level three

involves a forcible stop and detention, which requires "a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor." Level four is an arrest which requires probable cause to believe that the defendant was committing a crime. (*De Bour*, 40 NY2d at 223; *see also Hollman*, 79 NY2d at 184-185.)

Clearly, the stop here, which started out as a level two inquiry, quickly became a level three stop and then turned into a level four arrest as described in *People v De Bour*. The majority holds that the testimony about a white substance peeking out of defendant's clenched fist furnished probable cause for the arrest. However, Detective Barnes' testimony as to exactly when he saw this white substance was equivocal. It was either when he was approaching defendant, after nightfall, or when he actually stopped defendant and asked for his identification that the detective claims he saw the white substance, which justified the stop and frisk, followed by the arrest.

I do not believe that the circumstances described here warranted even a level two inquiry. While two men walking along and open hands touching, may have been sufficient for a level one inquiry, I do not believe it was reasonable for an officer to suspect that criminal activity was afoot (*see De Bour*, 40 NY2d at 223). Thus, under the tests set forth in *De Bour*, there was insufficient basis to approach the defendant and ask about weapons and for identification.

However, if indeed, the detective here actually saw a white substance as he approached defendant, a level two inquiry might have been justified. In *People v Bethea* (67 AD3d 502 [2009]), we held that the defendant's putting an object into his mouth and walking away in response to a police officer's request to speak was sufficient for a level two inquiry, but not for further pursuit or seizure. Here there was less basis for suspecting that criminal activity was afoot. Nevertheless, the encounter immediately turned into a level three forcible stop and detention requiring reasonable suspicion that defendant was committing a felony or misdemeanor (*De Bour*, 40 NY2d at 223). It then became a level four arrest, requiring probable cause to believe that defendant was committing a crime, when the detective grabbed defendant's wrist and pried open his fingers (*id.*). The arrest occurred after Detective Barnes patted down the defendant and found no weapons and despite defendant's and his companion's cooperation. Observing a clenched fist, even with a white substance peeking out was not sufficient to warrant an immediate seizure.

The cases cited by the prosecution to illustrate probable cause for a drug arrest, such as *People v McRay* (51 NY2d 594 [1980]),

*People v Lewis* (242 AD2d 307 [1997], *lv denied* 91 NY2d 876 [1997]), and *People v Balas* (104 AD2d 1039, 1040 [1984], *lv denied* 64 NY2d 757 [1984]) all involve observation of white glassine envelopes or vials or of identifiable substances or tin foil packets being passed among people in what appear to be drug transactions. *People v Ricciardi* (149 AD2d 742 [1989]) involved an automobile stop where white powder in a plastic bag was easily seen. The majority, citing *People v McRay* (51 NY2d 594 [1980]), states that there was probable cause for an arrest. In the instances described in *McRay*, experienced narcotics officers saw individuals passing white glassine envelopes to other individuals.

I do not believe walking side by side with hands touching but no exchange occurring and a clenched fist, even with a white substance peeking out, is enough to furnish probable cause for an arrest, and for that reason, would grant the suppression motion.