Memorandum. In this appeal by the People, defendant, a student at a high school, had moved to suppress certain evidence obtained by a school security officer. The officer had been informed by a dean of the school that a watch had been reported stolen from a student. Although no particular person was suspected, the defendant was found wearing a coat that fit the general description of the perpetrator. The defendant was taken to the dean’s office where the victim stated that defendant was not the thief. Defendant was never interrogated concerning the stolen watch. However, the officer noticed a slight bulge and a brown manila envelope protruding from defendant’s pants *698 pocket. After defendant emptied Ms pocket pursuant to request, alleged marijuana was discovered witMn the envelope.
In our opinion, the evidence seized was properly excluded by the trial court.
As held by the Supreme Court of the United States in Tinker v. Des Moines School Dist. (393 U. S. 503, 506) students do not shed their constitutional rights “ at the sehoolhouse gate ”. Although the Supreme Court in that case specifically addressed itself to First Amendment rights, the doctrine enunciated therein should be applicable to Fourth Amendment rights as well. This does not mean that such a doctrine is without exception. Indeed, as a general rule, a teacher, to a limited extent at least, stands in loco parentis to pupils under his charge (79 C. J. S., School and School Districts, § 493). As such, the courts have held that it would not be ‘ ‘ unreasonable or unwarranted that he [a coordinator of discipline] be permitted to search the person of a student where the school official has reasonable suspicion that narcotics may be found on the person of his juvenile charge ” (People v. Jackson, 65 Misc 2d 909, 911, affd. 30 N Y 2d 734). In People v. Overton (24 N Y 2d 522), the Court of Appeals after remand by the United States Supreme Court affirmed its prior decision (20 N Y 2d 360) which permitted a police officer to search a high school student’s locker based upon the consent of a school official. At page 524 of that decision the court stated: 1 ‘ In summarizing the supervisory position retained by the school, Judge Keatixg observed, 1 Not only have the school authorities a right to inspect ¡but this right becomes a duty when suspicion arises that something of an illegal nature may be secreted there. When Dr. Panitz [school vice principal] learned of the detectives’ suspicion, he was obligated to inspect the locker. This interest, together with the nonexclusive nature of the locker, empowered him to consent to the search by the officers. ’ (20 N Y 2d, p. 363; emphasis supplied.) ”
In People v. Duka (N. Y. L. J., March 14, 1974, p. 19, col. 7 [App. Term, 2d Dept.] ) the court upheld a search by a school security officer pursuant to the direction of the principal who had reasonable suspicion. The courts have thus far limited the doctrine of in loco parentis, including the right to search a student upon reasonable suspicion, to the professional staff of the school, as in People v. Jackson (supra). The court, therein, applied the doctrine of in loco parentis to a co-ordinator of discipline. It is important to note, however, that co-ordinators of discipline are faculty members of the schools in which they *699 are employed. In Jackson (p. 910) the court said: ££ A school official, standing in loco parentis to the children entrusted to his care, has, inter alia, the long-honored obligation to protect them while in his charge, so far as possible, from harmful and dangerous influences, which certainly encompasses the bringing to school by one of them of narcotics and £ works ’, whether for sale to other students or for administering such to himself or other students.”
School security officers although not considered peace officers within the contemplation of GPL 1.20 (subd. 33) are appointed pursuant to subdivision e of section 434a-7.0 of the Administrative Code of the City of New York. These officers" are appointed by the Police Commissioner at the request of1 thffi Board of Education and paid by the Board of Education but remain ££ subject to the orders of the commissioner "and shall obey the rules and regulations of the department and conform to its general discipline and to such special regulations as may be -made and shall during the term of their holding appointment possess all the powers and discharge all the duties of a peace officer while in the performance of their official duties.”
It is clear that the security officer is, at least, a governmental agent clothed with the authority of a peace officer and ultimately responsible to the Police Commissioner. He was placed in the school solely for security purposes and served no educational function.
In the instant case, Taylor is a law enforcement officer and should not be equated with a teacher. People v. Brown (N. Y. L. J., Dec. 15, 1970, p. 19, col. 2 [App. Term, 1st Dept.]) held that a security officer in a municipal hospital may act only on probable cause. It is worth noting that in the Brown case, the security officer, although he did not wear a uniform or possess a badge, was still required to act only on probable cause. The court therein, stated: ££ It is, in fact, cynical to hold that the Fourth Amendment protections apply to searches by police officers but not to other agents of the city who are required to perform like governmental functions and clothed with the color of authority to make arrests. The government may not appoint agents to perform governmental functions, as here, and at the same time claim that they are immune from constitutional restrictions placed upon governmental authority.”
With this in mind, it is difficult to justify attaching the doctrine of in loco parentis to a security officer, since that is a doctrine that has, thus far, been limited to legitimate school personnel. Therefore, unlike a faculty member of a school *700 who can search a student on the grounds of reasonable suspicion, a security officer, acting without direction of the school authorities, must premise such a search upon probable cause. Such a rule is not without logic; indeed, a member of the faculty views his role in disciplining a student in a different context than that of a security officer. The faculty member will use his experience, education, and unique relationship with the student to discipline him in such a manner as will best benefit the individual and school in general. A security officer, however, is employed for the purpose of maintaining school safety, handling disturbances and acts of crime.
Under the circumstances of the case at bar, the search of the defendant by the security officer violated the student’s Fourth Amendment rights. Therefore, the evidence obtained was properly suppressed by the lower court.
Order affirmed.
Concur — Croat, P. J., Margett and Cone, JJ.