1997–NMCA–015

933 P.2d 251

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**TYWAYNE H., a child, Defendant–
Appellant.**

**No. 16565.**

Court of Appeals of New Mexico.

Jan. 29, 1997.

Certiorari Denied March 26, 1997.

Tom Udall, Attorney General, Max Shepherd, Ass't Attorney General, Michelle S. Leighton, Ass't Attorney General, Santa Fe, for Plaintiff–Appellee.

T. Glenn Ellington, Chief Public Defender, Laurel A. Knowles, Ass't Appellate Defender, Santa Fe, for Defendant–Appellant.

## OPINION

APODACA, Chief Judge.

1. Child was adjudged a delinquent child for unlawfully carrying a deadly weapon on school premises, contrary to NMSA 1978, Section 30–7–2.1 (Repl.Pamp.1994) and NMSA 1978, Section 32A–2–3(A), (B) and Section 32A–2–16 (Repl.Pamp.1995). Child appeals, contending that the search of his person that uncovered the weapon was unlawful. We agree and reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Mothers Against Drunk Drivers (MADD) co-sponsored an after-prom dance with Clovis High School in the school's gymnasium. Two uniformed police officers from the Clovis Police Department provided security. The dance started between midnight and 12:30 a.m. Students were instructed to enter through the front entrance, where their hands were stamped. Once a student left the gym, he or she was not allowed to return.

3. Shortly after the dance began, Officer Mondragon and another officer arrived to check on the two officers already present. At about 12:45 a.m., two students, Child and a friend, entered through a side door. Officer Mondragon asked one of the school's coaches standing nearby if students were allowed to enter through that door. The coach said no. The four officers quickly surrounded the two students, and Officer Mondragon put his hand on Child's shoulder. The officers tried to see if the students had stamps on their hands, but it was too dark in the gym to tell. There is no dispute that the smell of alcohol emanated from the friend. This fact was communicated to Officer Mondragon. Officer Jackson testified that he smelled alcohol on Child and that Child admitted drinking one beer outside. Officer Mondragon asked Child to step outside, and Officer Summers asked the friend to follow. Both students were frisked. Officer Mondragon's pat-down search of Child uncovered

a loaded semi-automatic handgun. The officers testified that the students fully cooperated at all times and did not show any violent tendencies during the encounter.

4. Child filed a motion to suppress the evidence seized, arguing that the search was unlawful. The motion was denied, and Child appeals the denial of his motion.

## II. DISCUSSION

### A. Standard Of Review

■ 5. As a reviewing court, we must give weight to the trial court's inferences drawn from historical facts. *See Ornelas v. United States,* 517 U.S. 690, ——, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996); *State v. Attaway,* 117 N.M. 141, 144, 870 P.2d 103, 106 (1994); *State v. Esguerra,* 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App.1991) (in reviewing motion to suppress, facts reviewed in manner most favorable to prevailing party). The ultimate determination of reasonable suspicion and probable cause, however, is reviewed de novo. *Ornelas; State v. Graves,* 119 N.M. 89, 91, 888 P.2d 971, 973 (Ct.App. 1994).

### B. The Fourth Amendment And Reasonable Government Searches

6. All persons harboring a reasonable expectation of privacy are entitled to be free from unreasonable governmental intrusions. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 1873–74, 20 L.Ed.2d 889 (1968); *see Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 652, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564 (1995) ("[T]he ultimate measure of the constitutionality of a governmental search is 'reasonableness.'"). The Federal Constitution, through the Fourteenth Amendment, seeks to protect this freedom by prohibiting unreasonable searches and seizures by state officers. *Terry,* 392 U.S. at 9, 88 S.Ct. at 1873–74. Thus, in general, a state officer must have probable cause, evidenced by a warrant, to conduct a search. *See Horton v. California,* 496 U.S. 128, 133, 110 S.Ct. 2301, 2305–06, 110 L.Ed.2d 112 (1990); N.M. Const. art. II, § 10; *State v. Williams,* 117 N.M. 551, 554–55, 874 P.2d 12, 15–16 (1994). A warrant, however, is not required to establish

the reasonableness of every government search, and often when a warrant is not required, neither is probable cause. *Vernonia*, 515 U.S. at 653, 115 S.Ct. at 2391.

## 1. Was The Search Justified As A *T.L.O.* School Search?

7. The State argued to the children's court that school children do not have a reasonable expectation of privacy, and thus the Fourth Amendment does not apply to them. This is incorrect. School children do not shed their constitutional rights at the schoolhouse gate. *Vernonia*, 515 U.S. at 655–656, 115 S.Ct. at 2392; *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). Ample case law demonstrates that the Fourth Amendment applies to searches conducted by public school authorities. *See, e.g., Vernonia*, 515 U.S. at 653, 115 S.Ct. at 2391; *New Jersey v. T.L.O.*, 469 U.S. 325, 336–37, 105 S.Ct. 733, 739–40, 83 L.Ed.2d 720 (1985); *Doe v. State*, 88 N.M. 347, 351, 540 P.2d 827, 831 (Ct.App.1975); *State v. Michael G.*, 106 N.M. 644, 646–48, 748 P.2d 17, 19–21 (Ct.App.1987).

8. The State alternatively argues that the search was a legitimate school search permitted under the holding in *T.L.O.* In *T.L.O.*, the United States Supreme Court rejected the need for school authorities to obtain search warrants before searching students and also lessened the search and seizure standard for school authorities from probable cause to reasonable suspicion. 469 U.S. at 340–41, 105 S.Ct. at 742–43. The reason for this lessening of requirements was a need to balance the privacy interests of students against the school's interests in discipline and order. *Id.* at 341, 105 S.Ct. at 742–43. The test for proper searches by school officials expressed in *T.L.O.* was (1) whether the school authority's action was justified at its inception (i.e., whether there was reasonable suspicion to believe that the student was in violation of a law or school rule and that the search would uncover evidence of the violation) and (2) whether the search was reasonably related in scope to the circumstances that justified the interference. *Id. T.L.O.*,

however, limited its application to school authorities acting alone and on their own authority. *Id.* at 341 n. 7, 105 S.Ct. at 743 n. 7. The Court specifically did not address "the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies." *Id.*

9. The search here was not conducted by school authorities on their own initiative or even by school authorities with or at the direction of a law enforcement agency. Instead, it was conducted completely at the discretion of the police officers. The only police contact with a school official was Officer Mondragon's question to the coach concerning whether students were permitted to enter through the side door. The coach answered that they were not but gave no directive to the officers to search the students. During the pat-down search itself, there were no school authorities present.

10. We thus determine that *T.L.O.*'s lowered standard of reasonable suspicion does not apply under the circumstances of this appeal. Probable cause was therefore required to conduct the search of Child. *See, e.g., Picha v. Wielgos*, 410 F.Supp. 1214, 1221 (N.D.Ill.1976) (probable cause required if police involved in school search); *F.P. v. State*, 528 So.2d 1253, 1254–55 (Fla.Dist.Ct.App. 1988) (same); *State v. Young*, 234 Ga. 488, 216 S.E.2d 586, 594 (1975) (minimal standard of suspicion for school authorities applies if search is "free of involvement by law enforcement personnel"); *People v. Bowers*, 77 Misc.2d 697, 356 N.Y.S.2d 432, 435 (Sup.Ct. 1974) (same); 4 Wayne LaFave, Search and Seizure § 10.11(b), at 832 (3d ed. 1996) ("Lower courts have held or suggested that the usual probable cause test obtains if the police are involved in the search in a significant way."); *cf. Cason v. Cook*, 810 F.2d 188, 192–93 (8th Cir.1987) (search by plainclothes liaison officer in conjunction with vice-principal where officer's intrusion was minimal held to *T.L.O.* standard of reasonable suspicion); *Martens v. District No. 220, Bd. of Educ.*, 620 F.Supp. 29, 32 (N.D.Ill.1985) (same). *But see People v. Dilworth*, 169 Ill.2d 195, 214 Ill.Dec. 456, 463, 661 N.E.2d 310, 317 (search by police officer acting in

capacity as liaison officer for public school governed by *T.L.O.*), *cert. denied*, — U.S. ——, 116 S.Ct. 1692, 134 L.Ed.2d 793 (1996).

11. Our determination that *T.L.O.* does not apply to the facts of this appeal is buttressed by an analysis of the United States Supreme Court's three-prong test for determining whether a departure from the Fourth Amendment standard of probable cause and a warrant is appropriate. *Vernonia,* 515 U.S. at 653–660, 115 S.Ct. at 2391–94. The test requires that the conflicting interests of the State and the individual be examined in light of (1) the nature of the privacy interest upon which the search intrudes, (2) the character of the intrusion, and (3) the nature and immediacy of the search. *Id.*

■ 12. Regarding the first prong, the nature of Child's "privacy expectations vis-a-vis the State may depend upon the individual's legal relationship with the State." *Id.* at 654, 115 S.Ct. at 2391. Here, although Child's reasonable expectation of privacy is lowered with respect to a search by school authorities, *see T.L.O.,* it is not lowered with respect to a search by a uniformed police officer. *T.L.O.* gave leeway to school officials because "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." 469 U.S. at 340, 105 S.Ct. at 742. This rationale is not applicable to a uniformed police officer conducting a search on his own initiative. As Justice Powell explained in his concurring opinion in *T.L.O.,* 469 U.S. at 349–50, 105 S.Ct. at 747:

> The special relationship between teacher and student ... distinguishes the setting within which schoolchildren operate. Law enforcement officers function as adversaries of criminal suspects. These officers have the responsibility to investigate criminal activity, to locate and arrest those who violate our laws, and to facilitate the charging and bringing of such persons to trial. Rarely does this type of adversarial relationship exist between school authorities and pupils. Instead, there is a commonality of interests between teachers and their pupils. The attitude of the typical teacher

is one of personal responsibility for the student's welfare as well as for his education.

We also believe that "[a] school child's expectation of privacy vis-a-vis the State as police officer, even a police liaison officer, is not diminished simply because the child is at school." *Dilworth,* 214 Ill.Dec. at 472, 661 N.E.2d at 326 (Nickels, J., dissenting). Consequently, the nature of Child's privacy interests under the circumstances of this appeal suggests a standard of probable cause.

13. The second factor, the character of the intrusion, also suggests a probable cause standard in this appeal. It is undisputed that a pat-down search "is a serious intrusion upon the sanctity of the person." *Terry,* 392 U.S. at 17. Additionally, there is a sharp distinction between the purpose of a search by a school official and a search by a police officer. The nature of a *T.L.O.* search by a school authority is to maintain order and discipline in the school. 469 U.S. at 341, 105 S.Ct. at 742–43. The nature of a search by a police officer is to obtain evidence for criminal prosecutions. This involves "a more substantial invasion of privacy than a search for other purposes." *Dilworth,* 214 Ill.Dec. at 473, 661 N.E.2d at 327 (Nickels. J., dissenting); *see Vernonia,* 515 U.S. 658 n. 2, 115 S.Ct. at 2393 n. 2 (evidentiary searches generally require probable cause).

14. The third factor, the nature and immediacy of the government's concern in ridding the school grounds of weapons, is indisputably of great importance. The occurrence of any violent crime by a child on school grounds is obviously extremely disturbing and completely unacceptable. We note, however, that this concern is already addressed, if only slightly, by the fact that school authorities under *T.L.O.* have the right to search students based on a standard of reasonable suspicion.

15. Thus, although there is substantial government interest in clearing our schools of weapons, we determine that the undiminished privacy interests of Child with respect to a police officer, combined with the character of the intrusive police search, support our holding that the officer's search here required a standard of probable cause. Be-

cause the issue is not before us, we, like the Court in *T.L.O.*, need not decide the standard for searches by school authorities in conjunction with or at the behest of law enforcement agencies.

## 2. Was The Search Justified Under A Probable Cause Standard?

16. As we previously noted, warrantless searches are only permissible if they fall within an exception to the warrant requirement. *See State v. Valdez*, 111 N.M. 438, 440, 806 P.2d 578, 580 (Ct.App.1990). Exceptions include (1) probable cause plus exigent circumstances and (2) a search incident to an arrest. *Id.* The State argues that Officer Mondragon's search was justified under either of these theories.

### a. Probable Cause Plus Exigent Circumstances

17. Exigent circumstances are defined as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App. 1986). "We review the sufficiency of exigent circumstances by determining whether a reasonable, well-trained, and prudent police officer could conclude that swift action was necessary." *State v. Ortega*, 117 N.M. 160, 162, 870 P.2d 122, 124 (1994) (internal quotation marks omitted).

18. Even if we assume, for purposes of our discussion, that probable cause existed in this appeal under this exception, we fail to see the presence of any exigent circumstances. The officers testified that the two students were not violent in any way and in fact fully cooperated with them. The State presented no evidence of previous violence on school grounds or at school events to suggest the use of extreme caution. The officers did testify that they believed the incident in question was a "safety situation," but none of them could articulate why they thought so, other than that the students came in the wrong door and it was approximately 12:45 a.m. The latter factor is not particularly persuasive in light of the fact that the dance began only a few minutes before. The smell of alcohol added to these facts, in our view, does not indicate a likelihood of violence, thus compelling urgent action by the officer. Additionally, Officer Mondragon testified that he placed his hand on Child's shoulder to prevent him from running away. We also do not see how any evidence would be in danger of imminent destruction if Child were detained by the officers while another obtained a search warrant. *Cf. Copeland*, 105 N.M. at 31–32, 727 P.2d at 1346–47; *State v. Perea*, 95 N.M. 777, 779–80, 626 P.2d 851, 853–54 (Ct.App.1981). We thus determine that a reasonable officer would not believe swift action was necessary to prevent imminent danger, escape or destruction of evidence. This exception to the warrant requirement, therefore, does not apply.

### b. Search Incident To Arrest

19. When probable cause exists for an arrest, an officer may make a warrantless search of a suspect contemporaneous to or after the arrest. *See, e.g., In re Doe*, 89 N.M. 83, 85, 547 P.2d 566, 568 (Ct.App.1976). " 'Probable cause' exists when facts and circumstances within the officer's knowledge or on which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been, or is being, committed." *State v. Affsprung*, 115 N.M. 546, 549, 854 P.2d 873, 876 (Ct.App.1993).

20. The State argues that Officer Mondragon had probable cause to believe that Child wrongfully possessed or consumed alcohol. *See* § 32A–2–3(A)(2); NMSA 1978, § 60–7B–1(B), (E) (Repl.Pamp.1994). Officer Mondragon, however, never testified that he smelled alcohol on Child. There was also no testimony indicating that Officer Jackson told Officer Mondragon that he smelled alcohol on Child. The fact that Child's friend may have smelled of alcohol certainly would not give any of the officers probable cause to search Child. *See Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to

probable cause to search that person.");
*State v. Jones,* 114 N.M. 147, 150, 835 P.2d
863, 866 (Ct.App.1992) ("[W]e will not dis-
pense with the requirement of individualized,
,particularized suspicion."). We are also hesi-
tant to impute Officer Jackson's knowledge
to Officer Mondragon. *See People v. Mitch-
ell,* 185 A.D.2d 163, 585 N.Y.S.2d 759, 761
(1992) ("[Although] the police are permitted
to rely on the direction of their fellow officers
to arrest without simultaneously knowing the
underlying facts [that] led to such direction,
they cannot be considered to have relied on
information possessed by each other without
there having been any communication of ei-
ther the information itself or a direction to
arrest.") (citation omitted), *appeal dismissed,*
81 N.Y.2d 819, 595 N.Y.S.2d 390, 611 N.E.2d
291 (1993).

■ 21. Even if we were to assume that
our standard of review on appeal would allow
for the inference that Officer Mondragon
heard Officer Jackson's exchange with Child
about alcohol and could conclude that Child
had alcohol on his breath, we are not per-
suaded that the smell of alcohol on a person's
breath is proof of possession of alcohol and
thus a misdemeanor in the presence of an
officer. *See State v. Lyon,* 103 N.M. 305,
308, 706 P.2d 516, 519 (Ct.App.1985) (a police
officer may make warrantless arrest for mis-
demeanor offense if misdemeanor is commit-
ted in officer's presence). One does not
"possess" alcohol in one's body. *See State v.
McCoy,* 116 N.M. 491, 495, 864 P.2d 307, 311
(Ct.App.1993) (presence of drugs in the body
does not constitute possession), *rev'd on oth-
er grounds sub nom., State v. Hodge,* 118
N.M. 410, 882 P.2d 1 (1994). Child's admis-
sion that he had consumed a beer outside the
premises (outside the officers' presence) is
insufficient to warrant an arrest or a search
incident to such arrest. Past possession can-
not sustain an arrest. Even considering all
of the facts noted by the dissent that the trial
court could determine existed on remand, we
believe that those facts only form the basis
for a suspicion that Child may have been
carrying alcohol. Suspicion alone is not
enough to give rise to probable cause. *See
Copeland,* 105 N.M. at 31, 727 P.2d at 1346.
It is thus too great a leap to conclude that
there was probable cause to believe that

Child was violating Sections 32A–2–3 and 60–
7B–1(B), (E).

22. The State alternatively contends that
Child could have been arrested for trespass-
ing by entering through the wrong door.
This argument fails because it was not raised
below. *State v. Franks,* 119 N.M. 174, 177,
889 P.2d 209, 212 (Ct.App.1994).

### 3. Was The Search Justified Pursuant To The *Terry* Exception?

■ 23. In *Terry,* the United States Su-
preme Court upheld warrantless seizures as
lawful if based upon a reasonable suspicion
that criminal activity was afoot. 392 U.S. at
30, 88 S.Ct. at 1884–85. The Court also
upheld warrantless searches if limited in
scope and if the officer reasonably believed
safety was an issue. *Id.* at 27, 88 S.Ct. at
1883 ("[T]he issue is whether a reasonably
prudent man in the circumstances would be
warranted in the belief that his safety or that
of others was in danger."). Our Court in
*State v. Cobbs,* 103 N.M. 623, 630, 711 P.2d
900, 907 (Ct.App.1985), adopting this ratio-
nale from *Terry,* stated:

> An officer who stops a suspect on reason-
> able suspicion of [an inherently dangerous
> crime] may conduct a protective search.
> In order, however, to conduct a frisk of a
> person suspected of engaging in a nonviol-
> ent offense, such as possession of small
> amounts of marijuana, vagrancy, or posses-
> sion of liquor, additional articulable facts of
> potential danger must be present, as well
> as the suspicion of criminal activity.

24. As we previously noted, there was no
evidence presented that would allow a rea-
sonable officer to conclude that the students
were armed or presented a threat. In fact,
Officer Mondragon testified as such:

> [Public defender]: You did not have any
> facts that you knew of before you did that
> pat-down search that would give you rea-
> son to think [Child] was carrying a weap-
> on, did you?
>
> [Officer Mondragon]: No.

25. We determine that the facts available
to Officer Mondragon would not warrant a

reasonably prudent person under the circumstances to believe the action of searching Child was appropriate under a *Terry* analysis. *See Terry*, 392 U.S. at 27, 88 S.Ct. at 1883; *cf. State v. Blakely*, 115 N.M. 466, 468, 853 P.2d 168, 170 (Ct.App.1993) (pat-down search of suspect reasonable when suspect smelled of alcohol, appeared intoxicated, threatened suicide, and was being taken into protective custody). Therefore, even assuming that there may have been reasonable suspicion for the seizure of Child's person there was not reasonable suspicion for the frisk.

26. The children's court's reliance on *State v. Hilliard*, 81 N.M. 407, 467 P.2d 733 (Ct.App.1970), is misplaced. *Hilliard* discusses the reasonableness of a *Terry*-like stop, not a search.

## III. CONCLUSION

27. Crime in schools, especially crime involving weapons, is especially disturbing today. We can appreciate a parent's reaction of outrage toward a student who smuggles a concealed automatic weapon into a school function where the parent's children are present. Yet both the United States and New Mexico Constitutions require that we evaluate the conduct of law enforcement before we evaluate the conduct of the accused. Although making that evaluation may sometimes lead to frustrating results, there exists a paramount reason for doing so:

> In a government of laws, existence of the government will be imperilled if it fails to observe the laws scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every [individual] to become a law unto himself; it invites anarchy.

*Olmstead v. United States*, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

28. We conclude that the search here was unjustified. We therefore reverse the children's court's order denying Child's motion to suppress and remand for further proceedings consistent with this opinion.

29. **IT IS SO ORDERED.**

ARMIJO, J., concurs.

WECHSLER, Judge (concurring in part and dissenting in part).

30. I concur with Sections II(A), II(B)(1), and II(B)(3) of the majority opinion, but I respectfully dissent from Section II(B)(2)(b). I would not reach the issue addressed in Section II(B)(2)(a). The basis for the trial court's ruling is unclear and the testimony was conflicting on a critical point. I would remand to the trial court with directions to make findings of fact and to determine whether there was probable cause to justify the warrantless search of Child as a search incident to arrest.

31. The testimony of Officers Jackson, Baca, and Mondragon concerning which officers confronted which boy related to the propriety of the search and is conflicting. Officer Jackson testified that he smelled alcohol on Child and asked him if he had been drinking. Jackson also testified Child responded "that they had gone outside and he had drank one Budweiser beer." Officer Baca testified that he confronted Child's friend and that he smelled alcohol on him. Officer Mondragon testified that he was present when Officer Summers made statements about smelling alcoholic beverages and heard Summers asking "the other kid" whether he had been drinking. Mondragon also testified that Jackson and Summers had told him that they could smell alcohol on "the other individual that was with [Child]."

32. I believe that the testimony of the three officers shows that Jackson and Summers confronted one boy inside the gym while Mondragon and Baca confronted the other. There is no dispute that Mondragon was the one who later searched Child outside the gym, finding a loaded semi-automatic handgun on Child. Jackson testified that he and Summers confronted Child inside the gym while Mondragon and Baca confronted Child's friend, and Baca testified that he confronted Child's friend. Only Mondragon

testified that he confronted Child inside the gym. I think this difference is critical.

33. I agree with the majority that the smell of alcohol on a minor, without more, would not justify a warrantless arrest of Child for violation of the misdemeanor offense of being a minor in possession of alcohol. NMSA 1978, § 32A–2–3(A)(2) (Repl. Pamp.1995); NMSA 1978, § 60–7B–1(B), (E) (Repl.Pamp.1994). If the trial judge resolved the conflict in the testimony by finding that, despite Mondragon's testimony to the contrary, Mondragon actually confronted Child's friend rather than Child inside the gym, then there was more evidence: testimony from Jackson that Child smelled of alcohol; from Mondragon that he heard Summers questioning Child about alcohol; from Mondragon that Summers and Jackson communicated to him that they smelled alcohol on Child; from Jackson that Child admitted a misdemeanor (minor receiving alcohol); as well as the fact that Child was trying to enter or re-enter the dance through the wrong door.

34. We view the evidence in the light most favorable to affirming the decision of the trial court. See State v. Lankford, 92 N.M. 1, 2, 582 P.2d 378, 379 (1978) (appellate court must view evidence in light most favorable to state after conviction in trial court). I believe that the police officers would have had probable cause to believe that Child and his friend were carrying alcohol back into the gym on their persons, either for their own consumption or to give to others. See State v. Warren, 103 N.M. 472, 476–77, 709 P.2d 194, 198–99 (Ct.App.1985) (arresting officer may combine sensory perceptions with reasonable inferences and information provided by other officers to give rise to probable cause that misdemeanor was being committed in officer's presence). Alcoholic beverages were not permitted in the gym, the dance was set up to allow entry through only one door, and police security was obtained. These facts suggest that trouble of this sort was anticipated. Child's sneaking back in with alcohol on his person would be a misdemeanor committed in the officers' presence, thus justifying a warrantless arrest and a substantially contemporaneous search inci-

dent to that arrest. See In re Doe, 89 N.M. 83, 85, 547 P.2d 566, 568 (Ct.App.) (since officers had probable cause to arrest, seizure of marijuana which was "substantially contemporaneous" with formal arrest was product of proper search incident to arrest even though officers testified arrest occurred after seizure), cert. denied, 89 N.M. 206, 549 P.2d 284 (1976); see also Rawlings v. Kentucky, 448 U.S. 98, 110–11, 100 S.Ct. 2556, 2564–65, 65 L.Ed.2d 633 (1980). Warrantless arrest of a child is justified in the same circumstances as warrantless arrest of an adult. See NMRA 1996, 10–206 & Committee Commentary.

35. The fact that Child turned out not to actually have alcohol on his person does not invalidate the arrest. See State v. Luna, 93 N.M. 773, 777, 606 P.2d 183, 187 (1980) (arrest is not invalidated because officer gave wrong reasons for arrest, provided proper charge is based upon facts known to officer at time of arrest). LaFave states:

> Though the "in presence" rule might be construed as requiring that the misdemeanor in fact have occurred in the officer's presence, the modern view is that the officer may arrest if he "has probable cause to believe the offense is being committed in his presence." This is sound, for it provides a workable standard (based on how the situation is reasonably perceived at the time, rather than how it turned out) for judging police conduct, and makes it apparent that the officer's senses need not directly detect the misdemeanor so long as they reveal facts providing the reasonable belief that the offense is now occurring.

1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 3.5, at 242–43 (1984) (footnotes omitted). New Mexico follows this approach. See City of Roswell v. Mayer, 78 N.M. 533, 534–35, 433 P.2d 757, 758–59 (1967); Warren, 103 N.M. at 476, 709 P.2d at 198.

36. Mondragon testified that Jackson's and Summers' communications to him about the smell of alcohol did not really play a part in his conducting the patdown and that he thought it was "a safety situation." An officer's subjective legal analysis, however, is not relevant to our determination of the constitu-

tionality of the search. *See State v. Bolton,* 111 N.M. 28, 42, 801 P.2d 98, 112 (Ct.App.), *cert. denied,* 111 N.M. 16, 801 P.2d 86 (1990); *State v. Apodaca,* 112 N.M. 302, 305, 814 P.2d 1030, 1033 (Ct.App.), *cert. denied,* 112 N.M. 220, 813 P.2d 1018 (1991).

37. Because I believe the search of Child was justified as a search incident to arrest, I would not reach the question of whether the search was also justified as a search based upon probable cause plus exigent circumstances. I would remand and direct the court to make findings of fact on the critical issues and to apply the probable cause standard for the search, but without taking additional evidence. *See Corlett v. Smith,* 106 N.M. 207, 211, 740 P.2d 1191, 1195 (Ct.App.) (remand for specific findings on determinative issue when there is doubt or ambiguity on basis for court's ruling), *cert. denied,* 106 N.M. 174, 740 P.2d 1158 (1987); *State ex rel. Human Servs. Dep't v. Coleman,* 104 N.M. 500, 505, 723 P.2d 971, 976 (Ct.App.1986) (may remand when there is question about basis of court's ruling).