This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                       **NO. 29,950**

**ERIC M. GALVAN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**V. Lee Vesley, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Chief Judge.**

Eric Galvan (Defendant) appeals from the judgment and order suspending his sentence, convicting him of possession of a controlled substance, possession of drug paraphernalia, and possession of an alcoholic beverage by a minor. [RP 179]

Defendant raises four issues on appeal, contending that (1) the district court erred in denying Defendant's motion to dismiss for violation of his right to a speedy trial because Defendant was prejudiced by the delay, (2) the district court erred in denying Defendant's motion to suppress because Defendant was seized without reasonable suspicion, (3) the district court erred in allowing irrelevant testimony of witness Officer Herrera over proper objection by counsel, and (4) there was insufficient evidence to sustain the jury verdict. [DS 7]

This Court's calendar notice proposed summary affirmance. [CN1] Defendant has filed a memorandum in opposition that we have duly considered. [MIO] Unpersuaded, however, we affirm Defendant's convictions.

**DISCUSSION**

**Speedy Trial**

In reviewing a district court's denial of a speedy trial claim, we give deference to the facts found. *See State v. Maddox*, 2008-NMSC-062, ¶ 8, 145 N.M. 242, 195 P.3d 1254. Weighing and balancing the speedy trial factors are legal decisions, that we review de novo. *Id.*

In his memorandum, Defendant continues to assert that all of the *Barker* factors weigh heavily in his favor. [MIO 4-10] He contends that the length of delay was actually eighteen months (sixteen months by the time his speedy trial motion was

2

denied), which was excessively long for a simple case, creating an overwhelming presumption of prejudice. [MIO 5-6] Because the delays were caused by the district court's caseload and the State's failure to give notice to Defendant of settings, Defendant contends that the reason-for-delay factor weighs substantially in his favor. [MIO 6-7] Defendant contends that he timely asserted his right to a speedy trial by filing his motion to dismiss almost three weeks before the April 29, 2009, trial setting, and therefore the assertion-of-the-right factor weighs in his favor. [MIO 7] With regard to the prejudice factor, Defendant points out that although he was released within four days, he was still subjected to restrictions on his liberty for the entire time he was awaiting trial. [MIO 8] Defendant also reiterates the difficulties he had paying rent, establishing his career, furthering his education, and providing for his child, and he discusses the anxiety he suffered. [MIO 8-9] Defendant points out the memories of the witnesses had faded during the delay, in a situation where the videotape had not recorded the entire encounter. [MIO 9] In this case, however, the district court determined that even if the length of delay was presumptively prejudicial, when the *Barker* factors are analyzed and balanced, Defendant did not suffer undue prejudice and his right to a speedy trial was not violated. [RP 106-108] We agree.

**Length of Delay**

The length of delay in trying a defendant is not determinative, alone, of whether the right to a speedy trial has been violated. *See State v. Garza*, 2009-NMSC-038, ¶ 23, 146 N.M. 499, 212 P.3d 387. The length of delay is relevant for two purposes: (1) making the threshold determination of whether the delay was presumptively prejudicial, and (2) considering the delay as part of the speedy trial analysis. *Id.* "We calculate the length of delay from the date the Sixth Amendment right to a speedy trial attached when the defendant becomes [the] accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *Maddox*, 2008-NMSC-062, ¶ 10 (internal quotation marks and citation omitted).

In this case, Defendant claims that his right to speedy trial attached on January 1, 2008, when he was arrested, while the State claims that the right attached on November 3, 2008, when Defendant was arraigned in district court and entered his not-guilty plea. [RP 107, ¶ 4] The trial court presumed without deciding that Defendant's right attached on January 1, 2008, that the length of delay was at the time of the hearing almost sixteen months, and that therefore, the delay was presumptively prejudicial. [RP 107, ¶¶ 5-6] We agree with the district court's analysis, and because the delay exceeds the period of time allowed for a simple, intermediate, and complex case, we proceed to weigh the following *Barker* factors: (1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the actual

4

prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990) (adopting the balancing test in *Barker*). In *Garza*, our Supreme Court recently clarified, however, that a "'presumptively prejudicial' length of delay is simply a triggering mechanism, requiring further inquiry into the *Barker* factors," not a delay that carries forward a presumption of prejudice. *Garza*, 2009-NMSC-038, ¶ 21.

**Reasons for the Delay**

In this case, the record proper indicates that the first trial setting was February 16, 2009, which was vacated due to the district court's caseload. The second trial setting was March 30, 2009, which was vacated because Defendant did not get notice of the trial setting. We weigh this factor slightly against the State. *See State v. Hayes*, 2009-NMCA-008, ¶ 10, 145 N.M. 446, 200 P.3d 99 (filed 2008) ("A neutral reason, such as negligence or extensive caseload, should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." (internal quotation marks and citation omitted)), *cert. denied* 2008-NMCERT-012, 145 N.M. 571, 203 P.3d 102).

**Defendant's Assertion of the Right**

While Defendant did file his motion to dismiss on speedy trial grounds nearly three weeks prior to the April 29, 2009, trial setting, the motion was not filed until almost sixteen months after he was arrested on January 1, 2008. [RP 72] Moreover, even if Defendant requested that the matter proceed to trial in a timely manner in September and October 2008 [MIO 7], Defendant did not effectively assert his right to a speedy trial in a way that would invoke a ruling by the district court and preserve the issue for appeal until he filed his motion to dismiss in April 2009. *See State v. Rojo*, 1999-NMSC-001, ¶¶ 49-53, 126 N.M. 438, 971 P.2d 829 (stating that an issue concerning a possible violation of the right to a speedy trial must be raised in the trial court and a ruling invoked on the issue or it will not be considered on appeal). Under the circumstances, we agree with the district court that this factor weighs only somewhat against Defendant. [RP 107, ¶ 8]

**Prejudice to Defendant**

This factor is analyzed in light of the interests of a defendant which the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense would be impaired. *See State v. O'Neal*, 2009-NMCA-020, ¶ 27, 145 N.M. 604, 203 P.3d 135 (filed 2008).

The district court found that Defendant was arrested on January 1, 2008, and released on bond on January 4, 2008, concluding that Defendant did not suffer oppressive pretrial incarceration. [RP 107-08, ¶ 10] We agree.

With regard to the restrictions on his liberty prior to trial and his general anxiety and concern, which Defendant reiterates in his memorandum, Defendant claims that he could not pay his rent, he was forced out of his residence, he has been unable to further his education or establish a career during this time, he has had difficulty supporting his child, and he has suffered a great deal of anxiety about this matter. [MIO 8-9; RP 77-78] Defendant further asserted that the memories of the potential witnesses have faded and that their reliability was compromised, particularly in light of the fact that the videotape of the arrest was "erased." [RP 78]

The State showed, however, to the satisfaction of the district court as fact finder, that there was not a causal connection between Defendant being forced to leave his residence for failing to pay rent and this case, when Defendant failed to pay rent and was forced to leave his apartment more than two months after he was released from jail. [RP 94] The State further showed that Defendant has been actively involved in the criminal justice system since the age of fifteen, and, therefore, he cannot claim that he has little knowledge of the system or that this case alone affected his educational and career opportunities. [RP 95-96]

7

With regard to whether his defense has been impaired by the delay, the State showed that the witnesses were noticed to the defense and available for interviews in December 2008, in January 2009, prior to the March 20, 2009, trial setting, and in April 2009. [RP 65, 69, 96-97] The State further showed that the videotape was not erased as Defendant alleged in the docketing statement, but it was shut off after the driver was arrested and just as Officer Herrera retrieved the cocaine and glass pipe. [RP 97] Finally, Defendant made an insufficient showing as to what testimony he alleges to have been lost. *See State v. Urban*, 2004-NMSC-007, ¶ 18, 135 N.M. 279, 87 P.3d 1061 (noting the defendant's claims "concerning loss of witnesses[] is insufficient because [the] defendant made no showing as to what testimony ha[d] been lost" (alteration in original) (internal quotation marks and citation omitted)). Under the circumstances, we cannot say that Defendant has suffered undue prejudice. *See Hayes*, 2009-NMCA-008, ¶ 16 (pointing out that "[t]he focus of a speedy trial analysis is undue prejudice").

Therefore, although in this case, the length of delay was presumptively prejudicial, we agree with the district court that the reasons for delay weighed only slightly against the State, Defendant did not assert his speedy trial right until almost sixteen months after he was arrested, and Defendant was not unduly prejudiced. Thus,

8

in balancing the four *Barker* factors under the circumstances of this case, we agree with the district court that Defendant's right to a speedy trial was not violated.

**Motion to Suppress**

"Whether a search and seizure was constitutional is a mixed question of law and fact." *State v. Duran*, 2005-NMSC-034, ¶ 19, 138 N.M. 414, 120 P.3d 836. We review factual determinations by the trial court under a substantial evidence standard. *Id.* We review the lower court's determination of legal questions de novo. *Id.*

The record proper does not contain a written motion to suppress, a written response from the State, or a written ruling on the motion by the district court. The docketing statement indicates simply that Defendant's oral motion was brought on the basis that Defendant alleged that he was seized without reasonable suspicion and that the motion was denied by the district court. [DS 3]

Defendant claimed that while Officer Herrera approached the driver, Defendant was seized when the two back-up officers approached the passenger side of the vehicle, where Defendant was sitting, and blocked Defendant's egress from the vehicle. [DS 15] Defendant contended that the officers lacked reasonable suspicion to seize Defendant because the officers had no objective facts that indicated that Defendant is, or would be in the immediate future, engaged in criminal activity. [DS 16] In the memorandum, Defendant continues to argue that Officer Herrera lacked reasonable suspicion to call for backup and to make the decision to detain the driver and Defendant, the passenger. [MIO 12] Defendant contends that Officer Herrera's

general practice to keep passengers on the scene was insufficient to justify Defendant's detention. [Id.] He argues that all of the information gathered by Officer Herrera, therefore, including Defendant's identifying information and Officer Herrera's observations, should have been suppressed as the fruit of the officer's illegal detention of Defendant. [MIO 13] We continue to disagree.

While we agree with Defendant's statement of the applicable law, in this case, we hold that the officers had reasonable suspicion to detain Defendant while Officer Herrera investigated the driver before turning to Defendant. We will find reasonable suspicion "if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Taylor*, 1999-NMCA-022, ¶ 7, 126 N.M. 569, 973 P.2d 246 (filed 1998) (internal quotation marks and citation omitted).

Officer Herrera testified that when he approached the driver side window, he smelled a strong odor of alcoholic beverage emitting from the vehicle, and he saw alcoholic beverages on the passenger side floorboard. [DS 4, RP 81, MIO 2] Officer Herrera first investigated the driver and arrested him for DWI. [Id.] After about fifteen minutes, during which time the two back-up officers stood by the passenger door, Officer Herrera turned his investigation to Defendant. [DS 3-4] The officer

asked Defendant for his age and date of birth. [DS 4, RP 82, MIO 2] Defendant responded that he was nineteen years old, and although he denied having consumed alcohol, a field sobriety test confirmed that he had. [RP 82, MIO 2]

Aside from Officer Herrera's general practice to detain driver and passenger, which alone would probably not be sufficient, the strong odor of alcohol emitting from the vehicle, the presence of alcoholic beverages on the passenger side floorboard, which is where Defendant was sitting, and the fact that Defendant appeared to be under twenty-one, provided Officer Herrera with reasonable suspicion to request that the two backup officers detain Defendant by standing at the passenger side door for the fifteen minutes that Officer Herrera investigated the driver until Officer Herrera could investigate his reasonable suspicion that Defendant was possibly in possession of alcoholic beverages as a minor. Moreover, given that the officer smelled a strong odor of alcohol, saw the alcoholic beverages on the passenger side, and learned that Defendant was a minor but denied possessing or consuming alcohol, the officer was justified in requesting Defendant to step out the vehicle in order to further investigate whether Defendant was in possession of alcohol as a minor. When Defendant stepped out of the vehicle, the officer then saw the glass pipe and the white rocks, and he observed burn marks on Defendant's lips.

12

We hold that Defendant was detained upon the officer's reasonable suspicion that criminal activity was afoot, including possession of alcohol as a minor, which then led to the officer's reasonable suspicion that Defendant was in possession of a controlled substance. *See State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856 ("A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law."). Accordingly, we affirm the district court on this issue.

**Testimony of Officer Herrera**

"We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. Defendant argues that Officer Herrera should not have been allowed to testify that Defendant had "burn marks" on his lips. [DS 17] Defendant argues that this evidence is irrelevant, prejudicial to Defendant, and misleading to the jury. [Id.] Moreover, Defendant contends that this testimony constituted an "improper attempt by the State to present the jury with the implication that since [Defendant] had an injury on his lip he smokes crack and therefore possessed the crack and pipe found in the vehicle." [DS 18] In the memorandum, Defendant points out that his testimony "might have had additional sway with the jury had the error not been made." *See, e.g.*, *State v. Macias*, 2009-NMSC-028, ¶ 43, 146

13

N.M. 378, 210 P.3d 804. We continue to disagree that this testimony was erroneously admitted.

First, the fact that Defendant had burn marks on his lips was relevant to the possession elements of charges of possession of cocaine and possession of drug paraphernalia. Second, the cocaine and glass pipe were not only located near Defendant, on the center floorboard between Defendant and the driver, but the burn marks tended to indicate that Defendant knew that the substance and paraphernalia were there and that he had exercised control over them. *See* Rule 11-401 NMRA (stating that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Third, whether the marks on Defendant's lips were actually burn marks goes to the weight of the evidence, a matter for the jury's resolution upon the State's direct examination of the officer and Defendant's cross-examination of him. *See, e.g.*, *State v. Ryan*, 2006-NMCA-044, ¶ 20, 139 N.M. 354, 132 P.3d 1040 (concluding that "[i]t is the fact[]finder's prerogative to weigh the evidence and to judge the credibility of the witnesses"). Finally, we note that, "[t]he fact that competent evidence may tend to prejudice [the] defendant is not grounds for exclusion of that evidence. The question is whether the

14

probative value of the evidence was outweighed by its prejudicial effect." *State v. Hogervorst*, 90 N.M. 580, 588, 566 P.2d 828, 836 (Ct. App. 1977) (citation omitted).

Under the circumstances of this case, therefore, we hold that the district court was correct in determining that the probative value of the evidence was not outweighed by its prejudicial effect. Accordingly, we affirm the district court's admission of this testimony.

**Sufficiency of the Evidence**

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

In this case, the jury was instructed that in order to find Defendant guilty of possession of cocaine, the State must prove to its satisfaction beyond a reasonable

doubt each of the following elements: (1) Defendant had cocaine in his possession, (2) Defendant knew it was cocaine, and (3) this happened on or about January 1, 2008. [RP 140] The jury was further instructed that a person is in possession when he knows the substance is on his person or in his presence and he exercises control over it; that even if the substance is not in his physical presence, he is in possession if he knows where it is, and he exercises control over it; that two or more people can have possession of a substance at the same time; and that a person's presence in the vicinity of the substance or his knowledge of the existence or the location of the substance, is not by itself, possession. [RP 141]

The jury was also instructed that in order to find Defendant guilty of possession of drug paraphernalia, the State must prove to its satisfaction beyond a reasonable doubt each of the following elements of the crime: (1) Defendant had drug paraphernalia in his possession, a glass pipe, with the intent to use it to ingest, inhale, or otherwise introduce into the human body a controlled substance; and (2) this happened in New Mexico on or about January 1, 2008. [RP 142] As with the possession of cocaine charge, the jury was similarly instructed on what "being in possession" means. [RP 143]

The jury was instructed that in order to find Defendant guilty of possession of alcoholic beverage by a minor, the State must prove to its satisfaction beyond a

16

reasonable doubt the following elements of the crime: (1) Defendant did buy, receive, possess, or permit himself to be served with an alcoholic beverage; (2) Defendant was under the age of 21; and (3) this happened in New Mexico on or about January 1, 2008. [RP 144] With regard to each of the alleged crimes, the jury was instructed that they must find beyond a reasonable doubt that Defendant acted intentionally when he committed these crimes. [RP 146]

In the memorandum, Defendant contends that the State presented insufficient evidence that Defendant knew the crack cocaine, pipe, and alcohol were on the floorboard of the vehicle. [MIO 16-17] Defendant points out that the items' location on the passenger side floorboard, which established only Defendant's physical proximity to the items, is not enough to establish Defendant's knowledge and control over them. [MIO 17] Defendant contends that the odor of alcohol emitting from the vehicle and the fact that he did not pass the HGN test were not helpful in establishing that Defendant had been drinking alcohol. [Id.] Defendant further contends that the smell of alcohol on his breath is not proof of possession of alcohol and does not constitute a misdemeanor in the presence of the officer as a basis for arrest, citing *State v. Tywayne*, 1997-NMCA-015, ¶ 21, 123 N.M. 42, 933 P.2d 251. [MIO 17-18] We are not persuaded.

Initially, we note that our New Mexico Supreme Court has recently abolished the misdemeanor arrest rule in the DWI context. *City of Santa Fe v. Martinez*, 2010-NMSC-033, __ N.M. __, __ P.3d __ (holding that the misdemeanor arrest rule providing that an officer may only arrest without a warrant if the misdemeanor is committed in the officer's presence does not apply to DWI investigations). In any case, however, in order to prove constructive possession the State must prove both that Defendant knew the alcohol and the controlled substances were present in the car and exercised control over them. *See* UJI 14-130 NMRA; *State v. Morales*, 2002-NMCA-052, ¶ 28, 132 N.M. 146, 45 P.3d 406. As Defendant points out in the memorandum, proximity alone does not constitute possession. UJI 14-130. "[T]his Court must be able to articulate a reasonable analysis that the [fact finder] might have used to determine knowledge and control." *Morales*, 2002-NMCA-052, ¶ 29. Knowledge depends on whether the fact finder had sufficient evidence to conclude that Defendant knew the alcohol and the controlled substances were on the passenger floorboard. "The [s]tate must prove that [the] defendant had physical or constructive possession with knowledge of the presence and character of the item possessed. Such proof may be by the conduct and actions of the defendant." *State v. Garcia*, 2005-NMSC-017, ¶ 14, 138 N.M. 1, 116 P.3d 72 (internal quotation marks and citation omitted).

18

We hold that the State presented substantial evidence that Defendant had possession of alcohol as a minor and substantial evidence that Defendant was in possession of cocaine and of drug paraphernalia. Aside from the odor of alcohol emitting from the vehicle and Defendant's failure to adequately perform the HGN test, as discussed above, the officer testified that Defendant had "burn marks" on his lips. The testimony regarding the burn marks on Defendant's lips is crucial to establishing that Defendant knew about and exercised control over the controlled substances and the drug paraphernalia. *See, e.g.*, *State v. Barber*, 2004-NMSC-019, ¶ 28, 135 N.M. 621, 92 P.3d 633 (holding that, other than the location of the drugs, the State presented evidence establishing a direct connection between the drugs and the accused, thereby creating an inference of control). In addition, the fact that the crack cocaine and the drug paraphernalia were on the floorboard on the passenger side along with the alcoholic beverages, allows the reasonable inference that Defendant also knew the alcoholic beverages were there. *See, e.g.*, *Garcia*, 2005-NMSC-017, ¶¶ 15, 23 (discussing that "[the defendant] placed his beer bottle under the seat in a position right next to the gun, such that it would be hard for anyone not to be aware of the gun[]" and that "[t]he beer bottle was located in a place so near to the gun under the seat that, arguably, [the d]efendant could have been attempting to use the bottle in an unsuccessful attempt to hide the gun").

19

**CONCLUSION**

    We affirm Defendant's convictions.

    **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Chief Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**