People v Lantigua (2025 NY Slip Op 51962(U))

[*1]

People v Lantigua

2025 NY Slip Op 51962(U)

Decided on December 12, 2025

Criminal Court Of The City Of New York, Bronx County

Moore, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 12, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Jhosty Lantigua, Defendant.

Docket No. CR-010263-25BX

For the Defendant: The Legal Aid Society (by: Sara Dillon Carter, Esq.)
For the People: Darcel D. Clark, District Attorney, Bronx County (by: ADA Nefertiri Lashley)

Deidra R. Moore, J.

On April 11, 2025, Jhosty Lantigua (hereinafter referred to as "Defendant"), was arrested and charged with Penal Law ("P.L.") §§ 120.00[1] and 240.26[1], assault in the third degree and harassment in the second degree. The same day, an accusatory instrument was filed in Bronx County Criminal Court. The Defendant was arraigned on April 12, 2025, and released on his own recognizance.
Defendant moves for dismissal of the accusatory instrument pursuant to Criminal Procedure Law ("C.P.L.") §§ 30.30[1][b] and 170.30[1][e], asserting that the statutory speedy trial time has expired because the People did not comply with their discovery obligations pursuant to C.P.L. §§ 245.20[1] and 245.50[3].
Upon review and consideration of the submissions, court file, and relevant legal authority, the Court finds that the prosecution did not exercise due diligence to discharge their discovery obligations prior to filing the certificate of compliance. As such, the certificate of compliance is invalid, and its accompanying statement of readiness is illusory. Defendant's motion to dismiss pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
 RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
The criminal case commenced with the filing of the accusatory instrument on April 11, 2025 (C.P.L. § 100.05). The next day, Defendant was arraigned on a top charge of P.L. § 120.00[1], assault in the third degree, a class "A" misdemeanor. At arraignment, the prosecution served identification notice pursuant to C.P.L. § 710.30[1][b], expressing their intent to introduce identification evidence at trial. The identification notice indicated that at 11:30 a.m. on April 11, 2025, the complainant positively identified the Defendant while viewing multiple photographs. The case was adjourned to June 4, 2025, for supporting deposition and discovery compliance.
On May 22, 2025, the prosecution filed and served a supporting deposition via the Electronic Document Delivery Service ("EDDS"). At the June 4, 2025, court appearance, the Defendant was arraigned on the information, and the case was adjourned for discovery compliance to July 14, 2025.
On July 2, 2025, the prosecution filed and served, off calendar, a certificate of compliance ("COC") and statement of readiness ("SOR").
On July 14, 2025, the People stated ready for trial. Defense counsel indicated that she needed time to review discovery, and the case was adjourned to August 5, 2025, for discovery conference. At this appearance, Hon. Scott Krompinger informed the People that the court file contained their subpoenaed records (People's Opposition, Exhibit E at 5). The parties were directed to jointly compose and file a letter regarding outstanding discovery disputes prior to the next court date.
On August 1, 2025, the prosecution filed and served additional discovery, including the complainant's hospital records and a video taken by a civilian witness. A supplemental certificate of compliance ("SCOC") was filed the same day.
At the discovery conference on August 1, 2025, Defendant, through defense counsel, objected to the COC's validity, and the instant motion schedule was set.
By motion dated August 26, 2025, Defendant moved to invalidate the certificate of compliance and dismiss the accusatory instrument pursuant to C.P.L. §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e], alleging that the prosecution was not ready for trial within the statutorily permitted ninety-day period. The People filed their opposition on October 7, 2025; the defense reply followed on October 22, 2025.

APPLICABLE LEGAL FRAMEWORK
The prosecution must be ready for trial within ninety days of the commencement of the criminal action where, as here, the top count charged is a class "A" misdemeanor (C.P.L. § 30.30[1][b] and P.L. § 120.00[1]). When the defense asserts that more than the allotted speedy trial period has passed without a valid declaration of readiness, the People bear "the burden of proving that certain periods within that time should be excluded" (People v Berkowitz, 50 NY2d 333, 349 [1980]).
The speedy trial clock is statutorily tied to the prosecution's discovery obligations under C.P.L. Article 245 (C.P.L. §§ 245.50[3] and 30.30[5]). Before the People may be deemed ready for trial, thus tolling the speedy trial clock, they must serve on the defense a vast array of case-related material in their possession (C.P.L. § 245.20[1]). The People must also file with the court and serve on the defense a valid certificate of compliance, certifying that they have exercised due diligence and made reasonable inquiries and efforts to obtain and disclose all material subject to discovery (C.P.L. § 245.50[1]).
Discoverable material possessed by law enforcement agencies is deemed to be in the People's possession (C.P.L. § 245.20[2]). Additionally, the People must "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [C.P.L. § 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody or control" (C.P.L. § 245.20[2]). The People are not, however, required to obtain by subpoena duces tecum material which the defense may procure via subpoena (id.).
A COC's validity is dependent on the prosecution's exercise of due diligence in complying with their discovery obligations prior to the COC's filing, and the People bear the [*2]burden to establish that they acted with such diligence (People v Bay, 41 NY3d 200 [2023]). Courts assessing due diligence must consider, holistically, an array of factors, including "the efforts made by the prosecutor to comply with the requirements of Article 245; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and, whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial" (C.P.L. § 245.50[5][a]).

 DISCUSSION
I. The Parties' Arguments
a. The Disputed Items
The defense argues that the People failed to exercise due diligence in discharging their discovery obligations, as a significant amount of material was not timely disclosed. First, the defense contends that multiple items were shared only after defense counsel requested them, following the COC's filing. The belatedly disclosed items include a video of the event taken by civilian witness, "X.M." (citing C.P.L. 245.20[1][e], [g], & [h]); the FDNY Pre-Hospital Care Report (citing C.P.L. § 245.20[1][e] & [j]); medical records from St. Barnabus Hospital, where the complainant was treated after the incident (citing C.P.L. § 245.20[1][e]); and three documents generated by agents with the NYPD School Safety Division, including the Criminal Incident Report, and two Student Demographics Reports—one for the complainant, and one for the Defendant (citing C.P.L. § 245.20[1][e]).
Additionally, the defense asserts that some discoverable material has yet to be disclosed, including the names and contact information of the School Safety Division agents who responded to the incident, as well as additional records generated by these agents (C.P.L. § 245.20[1][e]); the photographs shown to the complainant by NYPD officers in the identification procedure (C.P.L. § 245.20[1][h]); and, underlying documentation for an IAB log for a testifying officer (C.P.L. § 245.20[1][k]).
b. The Parties' Arguments
i. Video Taken by Civilian Witness
With regard to the video possessed by X.M., the civilian witness, the defense avers that the prosecution was aware of—or should have been aware of—the video's existence; body-worn camera footage depicted X.M. informing an NYPD officer that she would send him the video. Moreover, the defense asserts, the People had an obligation to make diligent efforts to obtain and disclose the video.
The People maintain that the video was not automatically discoverable because it was not in their actual possession when the COC was filed. The People further contend that the video is duplicative of another video of the incident, which was shared with the defense prior to the COC's filing.
The defense counters that the belatedly disclosed video is distinct from the video which was timely shared. The belatedly disclosed video is eighteen seconds long and depicts the complainant walking away from the alleged assault while another person grabs his arm—the [*3]same arm that was allegedly injured by the Defendant (Defense Reply at 10-11). By contrast, the timely shared video lasts thirty seconds and depicts the altercation itself (Defense Motion at 8).
ii. School Safety Division Documents
The defense contends that documentation generated by School Safety Division agents is automatically discoverable: C.P.L. § 245.20[2] states that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution." The School Safety Division agents who responded to the scene are NYPD employees, thus making them part of a "New York state or local police or law enforcement agency" within the meaning of C.P.L. § 245.20[2].
The prosecution maintains that documents generated by agents with the School Safety Division are not automatically discoverable. The People acknowledge that the School Safety Division operates under the NYPD's authority, but argue that because school safety agents are not peace officers, documents possessed by these agents are not in the People's constructive possession pursuant to C.P.L. § 245.20[2][FN1]
(citing In re Steven A, 308 AD2 359 [1st Dept 2003] [articulating that school safety agents are civilian employees of the NYPD] and People v Bowers, 77 Misc 2d 697 [App Term, 2d Dept, 9th & 10th Jud Dists 1974] [noting that school security officers are not considered peace officers within the meaning of C.P.L. § 1.20(33)]). Moreover, the People contend, obtaining records from the School Safety Division required the use of a subpoena, and the defense could have subpoenaed these documents themselves (C.P.L. § 245.20[2]).
iii. Medical Records
The defense contends that the prosecution failed to make adequate efforts to obtain and disclose records from the complainant's treatment at St. Barnabus Hospital following the incident, as well as the FDNY Pre-Hospital Care Report. Although the medical records were not initially in the People's actual possession, C.P.L. § 245.20[2] requires the prosecution to "make a diligent, good faith effort to ascertain the existence of material or information discoverable under [C.P.L. § 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecution's possession, custody, or control."
The People counter that C.P.L. § 245.20[2] explicitly limits their duty to obtain otherwise discoverable material outside their possession and make it available to the Defendant, as the People are not required to subpoena material which the defense may acquire in this manner. Here, the prosecution maintains, the Defendant could have procured the complainant's medical records through the use of a so ordered subpoena.
Defendant, through defense counsel, asserts that he could not have obtained the medical records via subpoena duces tecum, as the records pertain to the complaining witness. Here, the People served a so ordered subpoena accompanied by the complainant's signed HIPAA authorization (Defense Motion, Exhibit G). Furthermore, the defense argues, the hospital records came into the People's actual possession on or about June 17, 2025, when they were received by [*4]Part AP4 in Bronx County Criminal Court.[FN2]
Nonetheless, the defense argues, the prosecution filed the certificate of compliance on July 2, 2025, without having disclosed the hospital records—records which speak directly to the complainant's physical injuries, a key element of the top charge facing Defendant.
iv. Photographs from the Identification Procedure
The defense notes that the prosecution did not disclose the photographs shown to the complainant in the identification procedure. C.P.L. § 245.20[1][h] requires the People to disclose "[a]ll photographs and drawings that relate to the subject matter of the charges against the defendant in the instant case or a defense thereto made or completed by a public servant engaged in law enforcement activity, or which were made by a person whom the prosecutor intends to call as a witness at trial or a pre-trial hearing." Moreover, the defense argues, the People gave C.P.L. § 710.30[b] identification notice at arraignment, indicating their intent to present identification evidence at trial; nonetheless, the People failed to disclose the photographs used in the identification procedure.
The People counter that they exercised due diligence to obtain the photographs, as "several phone calls were made" to Officer Pressley, who performed the identification procedure. Additionally, the People sent e-mails to Officer Pressley on July 30, 2025; August 1, 2025; and August 27, 2025 (People's Opposition at 15-16). On September 18, 2025, after the People called a sergeant at Officer Pressley's precinct, Officer Pressley notified the People that the photographs were no longer available, as the photographs were stored on a department-issued phone which Officer Pressley could no longer access. Nonetheless, the People argue that they made reasonable, diligent efforts to obtain the photographs, and that the items' loss does not affect the COC's validity.
II. The Court's Analysis
a. Discoverability of the Disputed Items under C.P.L. § 245.20[2]
i. The Eyewitness Video and the Complainant's Medical Records
Under C.P.L. § 245.20[2], "[t]he prosecutor shall make a diligent, good faith effort" to identify material, otherwise discoverable under C.P.L. § 245.20[1], but outside the prosecution's actual or constructive possession, and to cause this material to be made available to the defense. Both the civilian witness's video and the complainant's medical records are encompassed by this statutory provision. X.M.'s video, an electronic recording of the complainant departing the scene after the alleged assault, is otherwise discoverable under C.P.L. § 245.20[1][g]. The complainant's medical records contain "statements related to the subject matter of the case, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense thereto" (C.P.L. § 245.20[1][e]). The medical records include written summaries detailing the alleged assault, as well as the complainant's pain levels and injuries, relayed from the complainant to his [*5]medical providers. Additionally, the records contain assessments of the complainant's injuries from multiple medical personnel who treated him.
Both the witness video and the medical records speak to key issues in the case, including the complainant's appearance, demeanor, and actions at the time of or shortly after the incident; how the complainant described the incident; the nature of the complainant's injuries; and any alternative cause of the injuries. The existence of both items was readily apparent to the assigned prosecutor, as the video was referenced on body worn camera footage in the People's possession, and the complainant's treatment at the hospital was noted in the accusatory instrument (Criminal Complaint at 1-2).
Neither item is one the defense could have realistically obtained via subpoena without substantially greater effort than the prosecution. The People assert that "[d]efense counsel could have subpoenaed the medical records, as they were in possession of a contact for the Complainant" (People's Opposition at 15). Here, however, the People were in a markedly better position to obtain hospital records pertaining to the complainant (People v. Hernandez, 80 Misc 3d 1035, 1040 [Crim Ct, Bronx County 2023] [Defendant accused of assault unlikely to obtain by subpoena duces tecum complainant's medical records without a HIPAA authorization]); compare People v Ortega, 236 NYS3d 921 [Crim Ct, Bronx County 2025] [People not required to make efforts to obtain medical records, as the records pertained to Defendant, rather than an adversarial party]). Indeed, the People were able to obtain the complainant's signed HIPAA authorization, which they annexed to their so ordered subpoena to the hospital. As the People were significantly better situated to obtain both X.M.'s video and the complainant's medical records, C.P.L. § 245.20[2] required them to make a diligent, good faith effort to obtain these items and make them available to the Defendant (People v Haggan, 85 Misc 3d 1224(A) [Sup Ct, New York County 2025] [People required to make a diligent good faith effort to obtain medical records documenting the complainant's injuries]).
ii. Material Generated by School Safety Agents
Under C.P.L. § 245.20[2], discoverable material possessed by any New York state or local law enforcement agency is deemed to be in the prosecution's possession.
The prosecution argues that, because school safety agents are civilians rather than peace officers, documentation in the agents' custody is not constructively possessed by the People. The People's assertion is somewhat confounding. The School Safety Division has operated under the authority of the NYPD since 1998 (Randal C. Archibold, New Era as Police Prepare to Run School Security, NY Times, September 16, 1998, § B at 1; Yoav Gonen, NYPD to Remove Management of School Safety Agents from Community-Focused Unit, August 21, 2025, available at 
https://www.thecity.nyc/2025/08/21/nypd-school-safety-agents-john-chell/, last visited December 11, 2025). School safety agents, though classified as civilian employees of the NYPD, wear uniforms bearing an NYPD badge, and their training includes up to seventeen weeks of attendance at the police academy (https://nypdrecruit.com/pages/school-safety-agent-training-physical-requirements, last visited December 11, 2025). School safety agents "apprehend[] persons violating the Penal Law and notify the proper administrative personnel"; school safety agents also "prepare reports and testify in regard to these violations at Superintendent's or Principal's hearings and/or in court" (see 
https://nypdrecruit.com/pages/school-safety-agent, last visited December 11, 2025).
The Court rejects the People's assertion that material possessed by NYPD school safety agents falls outside the prosecution's constructive possession under C.P.L. § 245.20[2]. The plain [*6]language of C.P.L. § 245.20[2] provides that the People constructively possess discoverable material in the custody of "any New York state or local police or law enforcement agency." Discoverable material possessed by NYPD employees, generated in the course of their official duties, is possessed by the agency itself. The Court finds no textual support for the People's argument that their constructive possession extends only to material possessed by peace officers; nothing in the language of the statute indicates that constructive possession is dependent on the role or title of the material's custodian. The People's interpretation of C.P.L. § 245.20[2] risks the withholding of case-related material based on NYPD employment classifications that have no bearing on the value of the material itself, and invites difficulty effectuating discovery compliance in a consistent manner. Consequently, the Court finds that discoverable material in the possession of NYPD school safety agents is in the prosecution's constructive possession under C.P.L. § 245.20[2].
b. Due Diligence under C.P.L. § 245.50[5]
The People recount general efforts to comply with their discovery obligations, as well as efforts specific to the disputed items. The People began their discovery gathering promptly on April 15, 2025, by sending an e-mail to NYPD discovery liaisons. The People sent follow up e-mails on April 25, 2025, and again on April 29, 2025.
On April 30, 2025, the arresting officer replied to the assigned prosecutor, offering to text a video of the incident supplied by the complainant's brother. On May 14, 2025, the prosecution again e-mailed the discovery liaisons and arresting officer about outstanding discovery; in this e-mail, the assigned prosecutor asked the arresting officer to "share the video of the incident to my e-mail" (People's Opposition, Exhibit B). The video received from the complainant's brother was shared with defense counsel prior to the COC's filing, but the second video, referred to by X.M. on body-worn camera footage, was not.
The People intimate, without explicitly stating, that the video from X.M. was overlooked because one video of the incident had already been received from the complainant's brother (People's Opposition at 12-13). But the People's belated awareness of X.M.'s video suggests a failure to review their own discovery prior to the COC's filing, and e-mail communications annexed to the People's Opposition corroborate this lack of review. In a July 17, 2025, e-mail to X.M., the assigned prosecutor wrote, "[d]efense is stating in a video from NYPD you stated you had two videos of the fight" (People's Opposition, Exhibit C). The assigned prosecutor had previously spoken with X.M. on July 1, 2025, prior to filing the COC; had the People reviewed their discovery and realized that the second video existed, the video could have been obtained during this conversation. Instead, the People first requested the video on July 17, 2025, obtained it on July 23, 2025, and shared it with defense counsel on August 1, 2025.
With regard to the medical records, the so ordered subpoena for records to St. Barnabus Hospital is dated June 9, 2025, and is accompanied by a HIPAA authorization signed by the complainant dated May 22, 2025 (Defense Motion, Exhibit E). The People state that they requested medical records from the FDNY on June 10, 2025, and from St. Barnabus on June 11, 2025.
It is unclear from the information before the Court when the medical records from St. Barnabus Hospital came into the People's actual possession. In response to the People's subpoena, St. Barnabus Hospital gathered the complainant's records on June 17, 2025; the envelope in which the records arrived, still in the court file, bears pre-printed postage dated June 18, 2025. The People contend that, whenever the court part received the medical records, they [*7]were not informed of the records' arrival until the court appearance on July 14, 2025, and that the records were not shared with the defense until August 1, 2025, because the People needed to review the records to determine whether they would need to seek a protective order to withhold or redact information.
The People initially exercised due diligence here to obtain the medical records, utilizing a signed HIPAA authorization along with a so ordered subpoena. Several courts of concurrent jurisdiction have found that "the disclosure of a complaining witness's medical records after the initial CoC is filed does not serve as a basis to invalidate it where the records where not in the People's possession or control when the initial COC was filed" (People v Kingsberry, 200 NYS3d 758, [Crim Ct, Bronx County 2023]); People v Clarke, 238 NYS3d 72 [Crim Ct, Bronx County 2025]). Here, however, the hospital gathered and mailed the records nearly two weeks before the COC was filed, and almost one month before the People say they were informed of the response to the subpoena at the next court appearance. Assuming the District Attorney's Office received no notifications of the subpoena response, a simple follow-up call to the hospital or court clerk would have informed them that the records had been secured.
The People recount no efforts to obtain the names or contact information of the school safety agents at the scene, or any documentation generated by these agents, until July 29, 2025, after defense counsel notified the People that the school safety agents were visible in officers' body worn camera footage. The People received the School Safety Division's Criminal Incident Report about the matter, as well as Student Demographics Reports, on July 30, 2025. It is unclear from the People's filings whether additional reports or material may have been generated by the school safety agents. As with the School Safety Division reports, the People's recounted efforts to obtain the identification photographs occurred only after defense counsel alerted the People that these items were missing (People's Opposition at 15). As such, the People did not make diligent efforts to comply with their discovery obligations with respect to the School Safety Division records or the photographs.
As a prosecution for misdemeanor assault, involving a single incident, this case is not a particularly complex one, nor does it involve voluminous discovery. Nonetheless, diligent discovery gathering demanded more proactivity than in similar cases. Because the complainant was treated for his injuries, civilian witnesses obtained videos of the incident, and the first NYPD personnel on the scene were school safety agents, the prosecution was required to seek material from sources other than the arresting officer and precinct discovery liaisons, the primary parties from whom Bronx County misdemeanor prosecutors receive discovery. But this proactivity is precisely what C.P.L. Article 245 requires of the People. Each case is unique; the types of discovery involved and the potential sources from which it must be sought will vary. In the dynamic and fact specific discovery context, the prosecution cannot ensure that they have complied with their discovery obligations without reviewing the discovery in their possession (People v Stinson, 2025 NY Slip Op 51893(U) [Crim Ct, Kings County]; People v Kents, 232 NYS3d 775 [Crim Ct, Bronx County 2025]). When the People fail to perform such a review, they operate in the dark, only guessing that they have provided all of the required discovery.
The content of the belatedly disclosed material, particularly the medical records and the civilian video, is substantive and not duplicative of other items. Furthermore, although the medical records, some School Safety Division reports, and the civilian video were disclosed following notification by defense counsel, the photographs used in the identification procedure were not, thus inhibiting the defense's ability to prepare for suppression hearings. The defense [*8]further asserts that the belated disclosure of X.M.'s video, as well as the complainant's medical records, impeded their ability to investigate and prepare for trial.
Although the instant matter required the People to engage in more dynamic discovery gathering than similar misdemeanor assault cases, the Court cannot find that they carried their burden to establish due diligence in discharging their obligations under C.P.L. Article 245. Upon a consideration of the factors outlined in C.P.L. § 245.50[5][a], the certificate of compliance, dated July 2, 2025, is deemed invalid.

THE CPL § 30.30 CALCULATION
The first day counted for speedy trial purposes is the day after the filing of the accusatory instrument, April 12, 2025. The prosecution filed and served the COC on July 2, 2025. As discussed supra, the COC was invalid and failed to toll the speedy trial clock. Pursuant to C.P.L. § 30.30[4][b], the speedy trial clock was tolled on July 14, 2025, when defense counsel requested an adjournment to review discovery (April 12, 2025 — July 14, 2025 = 94 days).
As more than ninety (90) days are chargeable to the People, their speedy trial period has elapsed.

 CONCLUSION
Upon review and consideration of the submissions, court file and relevant legal authority, Defendant's motion to dismiss pursuant to CPL §§ 245.50[4][c], 30.30[1][b], and 170.30[1][e] is GRANTED.
This constitutes the opinion, decision, and the order of the Court.
Dated: December 12, 2025
Bronx, New York
Hon. Deidra R. Moore, J.C.C.

Footnotes

Footnote 1:The People argue that "[t]he legal framework governing NYPD School Safety personnel and their relationship to other entities, including the District Attorney's Office, indicates that these personnel operate as part of the New York City Police Department (NYPD) and are distinct from the prosecutorial functions of the District Attorney" (People's Opposition at 14).

Footnote 2:The prosecution counters that the defense's assertion that the court part received the records on June 17, 2025, is incorrect. The HIPAA signed by the complainant is dated May 22, 2025, and the so ordered subpoena for the hospital records is dated June 9, 2025. The cover page of the furnished hospital records, signed by the hospital's director of health information management, is dated June 17, 2025. The postage on the manila envelope containing the medical records bears a date of June 18, 2025.